Charles M. WHITE, Appellant,

v.

Jere E. SULLIVAN; Ronald I. Small; John R. Morris; Sullivan, Small & Morris, P.S.C.; Sullivan, Morris & Sullivan, P.S.C.; Samuel Milner; Walter R. Morris, Jr.; and Milner and Morris, Appellees.

Court of Appeals of Kentucky.

Aug. 26, 1983.

Discretionary Review Denied by Supreme Court May 2, 1984.

James Park, Jr., Park & Sullivan, Maxwell P. Barret, Jr., Stoll, Keenon & Park, Lexington, for appellant.

Samuel Milner, Walter R. Morris, Jr., Milner & Morris, Lexington, for appellees.

Before HOWARD, HOWERTON and PAXTON, JJ.

HOWARD, Judge.

The Fayette Circuit Court held the appellant in contempt of court for violating a restraining order and permanent injunction issued by that court to enjoin breach of a covenant not to compete contained in an employment contract between the appellee accounting firm and an individual accountant. The appellant was ordered to pay appellees $65,233.89 to purge himself of the contempt and to pay $13,027.34 for appellees' attorneys' fees. It is from this order that appellant appeals.

A detailed statement of the facts is necessary here to set out the events that culminated in appellant's involvement in this case. The defendant in the case below, William J. Clancy ("Clancy"), was employed by his uncle's accounting firm ("Sullivan") in Lexington. On November 14, 1974, Clancy, and all other professional employees of Sullivan, executed an employment contract which contained a covenant not to compete. The covenant provided that, upon terminating their employment with Sullivan, the employees would be prohibited for five years from practicing public accounting within fifty (50) miles of the Fayette County border and from representing any client of Sullivan who was a client as of the date of the employee's departure.

On November 12, 1975, Clancy terminated his employment with Sullivan and immediately opened an accounting office of his own in Lexington. On December 16, 1975, Clancy hired the appellant ("White") as a CPA for his office. On December 29, 1975, Sullivan filed suit against Clancy and the next day the court entered a restraining order against Clancy, ordering him to comply with the provisions of the covenant not to compete. Thereafter, Clancy moved his office to Somerset and White continued to be employed by him in that new location.

Sometime in February, 1976, White became an "independent contractor" remaining in an office next to Clancy's in Somerset. However, White's clients were, for the most part, former clients of Sullivan whom he met while employed by Clancy or who had come to him upon Clancy's recommendation. Further, White continued to use Clancy's secretary at no expense to him. He also performed accounting services for Clancy on a per diem basis.

On April 20, 1976, an agreed judgment was entered, ordering Clancy to comply with the above-stated terms of the covenant not to compete with Sullivan. On July 20, 1976, the trial court required Clancy to show cause why he should not be held in contempt of court for violating the agreed

judgment. After a hearing, Clancy was held in contempt on January 7, 1977, and on October 5, 1977, the court entered a "contempt order and judgment" against Clancy requiring him to pay $33,753.34 to Sullivan. No appeal was taken from this judgment.

In the meantime, in September, 1976, White had moved his accounting office from Somerset to Lebanon. However, he continued to perform services for Clancy under their "per diem" arrangement and to serve the former Sullivan clients that Clancy was prohibited from serving. On December 13, 1976, the trial court issued, on its own motion, a show cause order directing White to show cause why he should not be held in contempt for aiding and abetting Clancy in violating the injunction. In January, 1977, the order was set aside on White's motion, to allow him to file a memorandum setting forth his legal defenses.

On January 18, 1979, the court entered a second show cause order against White. On July 11, 1979, yet another show cause order was entered against White and against Clancy directing him to show cause why he should not be again held in contempt for additional violations of the injunction. After several hearings, the court concluded that Clancy and White "agreed and conspired together and each took overt action to implement and maintain a scheme to deprive plaintiffs (Sullivan) of a substantial number of their clients in direct violation of the terms of the restraining order and injunction and to acquire those clients for themselves." Accordingly, under the final judgment of July 14, 1981, White was ordered to pay Sullivan a compensatory sum of $65,233.89 and attorneys' fees in the amount of $13,027.34. We affirm in part and reverse in part.

■ White initially argues that the trial court had no authority to award compensatory damages in contempt proceedings. In support of this argument, he cites several cases from other jurisdictions. Kentucky courts have not ruled on the specific issue as to whether or not an injured party in contempt proceedings is entitled to an award of compensatory damages or a fine. However, a clear majority of other state courts allow such compensatory damages. 85 A.L.R.3d *Contempt* § 2 (1978) at 895. Furthermore, compensatory damages for contempt are awarded by the Federal Courts. *In Re American Associated Systems, Inc.,* 373 F.Supp. 977 (1974); *Vuitton et Fils S.A., v. Carousel Handbags,* 592 F.2d 126 (2nd Cir.1979). Although White contends that such damages should not be awarded absent specific statutory authority, that is only one of the ways such damages can be authorized. The states that allow compensatory damages in contempt proceedings are divided in two categories— those which have specific authorizing statutes and those which, by judicial decision, hold that in proper circumstances a court may impose such a fine payable to the aggrieved party. *Id.* The trial court below did not err in awarding compensatory damages to Sullivan since, although there is no statute or legal precedent, the circumstances of this case certainly merit such a fine. Civil contempt proceedings, and injunctions preceding them, would carry very little weight without such remedies to compensate the aggrieved party. Judge Swinford aptly stated the rationale for the rule in his opinion in the case of *In Re American Associated Systems, Inc., supra,* p. 979:

> Unlike its criminal counterpart, civil contempt is 'wholly remedial' serves only the purpose of a party litigant, and is intended to coerce compliance with an order of the court or to compensate for losses or damages caused by noncompliance. *Southern Railway Company v. Lanham,* 403 F.2d 119, 124 (5th Cir.1968).

■ White's next contention is that he was entitled to a trial by jury. However, according to CR 39.01(c) the court can refuse trial by jury when "because of the peculiar questions involved, or because the action involves complicated accounts, or a great detail of facts, it is impracticable for a jury intelligently to try the case." Here it is obvious that due to the complicated nature of the case, the volumes of facts

involved and the difficulty in ascertaining exactly what had transpired between the various accountants and clients it was fully within the trial court's discretion to refuse to designate this case as one for the jury.

White cites *International Association of Firefighters v. Lexington-Fayette Urban County Government*, Ky., 555 S.W.2d 258 (1977), and *Miller v. Vettiner*, Ky., 481 S.W.2d 32 (1972), in support of his contention that he was entitled to a jury trial.[1] Neither of these cases were as factually complex as the present case. Both of them involved the issue of whether a contempt fine was characterized as being "petty" or "serious" in the context of the necessity for a trial by jury. We find it unnecessary to apply this standard here since we have found that the trial court acted correctly in denying a jury trial due to the discretion the court is given in CR 39.01(c). The appellees argue that the request for jury trial was too late, having been made after four days of testimony. CR 38. However, since the trial court did not address this point and because of the unusual nature of this proceeding we do not think CR 38 is applicable.

The next argument the appellant raises is that the agreed judgment was not specific in terms as required by CR 65.02(2), which states: "Every restraining order or injunction shall be specific in terms and shall describe in reasonable detail, and not by reference to the complaint or other document, the act restrained or enjoined." The purpose of this rule, which parallels the Federal Rule 65(d), was explained in *Fiscal Court Etc. v. Courier-Journal & Louisville Times Co.*, Ky., 554 S.W.2d 72 (1977):

> The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood. *Schmidt v. Lessard*, 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974).

White claims that the injunction failed to identify the clients he was proscribed from serving. However, it is clear that in this case White knew that the clients he was receiving through Clancy were Sullivan's former clients. The court found that White had "actual knowledge that most of his work done for Clancy, initially at least, was for clients who were former clients" of Sullivan. The problems anticipated by CR 65.02(1) simply were not present here as White understood exactly what the injunction attempted to cure. Therefore, the provisions of CR 65.02(1) were satisfied as the injunction was sufficiently specific.

White's fourth argument is that the agreed judgment did not prohibit him from serving former clients of Sullivan since he was a non-party. CR 65.02(2) provides that such an action is binding on "the parties ... *and* upon other persons in *active concert* or participation with them who receive actual notice of the restraining order or injunction by personal service or otherwise." (Emphasis added.) The court below found that White "was bound by the Injunction only to the extent that he acted as an agent of or in concert with Clancy." The court's findings were, therefore, within the dictates of CR 65.02, as White was found in contempt only for those actions in which he participated with Clancy. As the court's findings are in no way clearly erroneous, we will not disturb them here. CR 52.01.

White's next contention is that the damages awarded by the trial court were excessive. White cites no cases to support his argument against the court's award. However, a similar Wisconsin case, *Novo Industrial Corp. v. Nissen*, 30 Wis.2d 123, 140 N.W.2d 280 (1966), involved a defendant who was held in contempt for disregarding an injunction preventing him from engaging in business in violation of a non-competition clause. There the Court up-

---

**1.** It is interesting to note that in both of these cases, the Court upheld the imposition of fine

for contempt *without* a jury trial.

held a $48,985.08 damage award. Noting that the standard used by trial courts to ascertain damages is not perfect, the Court stated that:

> [U]nder the particular circumstances, the trial court set the damages as reasonably, fairly, and certainly as it could, undoubtably acting in accordance with the well established rule that by having caused the uncertainty of proof, the contract breacher is precluded from demanding a more precise measure of damages. 85 A.L.R.3d *Contempt* § 6 (1978), at 911–912.

Here the trial court was faced with countless volumes of evidence, dozens of names of clients, and figures that could be expected in a case involving accountants. The court reached the amount of $65,233.89 after examining records spanning several years. Reviewing the record, we find sufficient evidence to support the damage award and therefore we will not disturb same. CR 52.01.

White's final argument is that the trial court erred in awarding attorneys' fees to Sullivan. Sullivan is correct in its assertion that the majority rule is that "in proper circumstances a reasonable attorney's fee may be allowed to the prevailing plaintiff in a civil contempt proceeding ...." 43 A.L.R.3d *Civil Contempt Action —Attorney's Fees*, § 3 (1972) at 797. However, Kentucky Courts have been consistently reluctant to uphold awards of attorneys' fees except in those particular instances when such fees are authorized by a statute or a contract expressly providing therefor. *Holsclaw v. Stephens*, Ky., 507 S.W.2d 462 (1974). *See also Nick's Auto Sales v. Radcliff Auto Sales*, Ky.App., 591 S.W.2d 709 (1979). As that is the well-established rule in Kentucky, the trial court erred in awarding $13,027.34 in attorneys' fees to Sullivan under these circumstances.

The judgment of the trial court is hereby affirmed in part and reversed in part.

All concur.