WOODWARD, HOBSON & FULTON, L.L.P., Appellant,

v.

REVENUE CABINET, Commonwealth of Kentucky, Appellees.

No. 2000–CA–002784–MR.

Court of Appeals of Kentucky.

Feb. 22, 2002.

John F. Gleason, Elizabeth Ullmer Mendel, Woodward, Hobson & Fulton, L.L.P., Louisville, KY, for appellant.

Douglas M. Dowell, Revenue Cabinet, Legal Services, Frankfort, KY, for appellee.

Before BARBER, EMBERTON, and KNOPF, Judges.

## OPINION

BARBER, Judge.

We are asked to decide whether a law firm is required to pay use tax upon charges for photocopies of medical and hospital records acquired from out-of-state providers in connection with litigation. For the reasons set forth below, we conclude that the transactions at issue are not subject to the use tax and reverse.

The Appellant, Woodward, Hopson & Fulton, L.L.P. ("Woodward"), is a Kentucky law firm. The Revenue Cabinet audited Woodward for the period of January 1, 1984 through March 31, 1993, and determined that $2,592.79 was owed in use tax on Woodward's acquisition of copies of medical records from out-of-state physicians, hospitals, and other health care providers. The Cabinet also imposed a penalty. By order dated July 8, 1999, the Kentucky Board of Tax Appeals ("the Board") affirmed the assessment for use tax, but dismissed and set aside the penalty. The Board's order provides, in pertinent part:

The contested portion of the audit was $2,592.79, for use tax attributable to

Woodward's purchase of copies of medical records from physicians, hospitals, and other health care providers. These transactions were purchases of tangible personal property used by the law firm to provide legal services to clients. In these transactions, the health care providers were not rendering medical services. Woodward also contested the $1,652 in penalties related to the assessment for the copies of medical records....

. . . .

Sales of tangible personal property or purchases of that property for use, storage, or other consumption in this state are subject to sales and use tax unless the taxpayer establishes to the contrary. *Delta Air Lines, Inc. v. Revenue Cabinet,* Ky., 689 S.W.2d 14, 17 (1985), KRS 139.260, 139.400.

... Woodward has the burden of proof to show the Board ... should set aside the final ruling of the Revenue Cabinet. The Revenue Cabinet has the burden proof to show the Board ... should impose the penalties sought. KRS 13B.090(7).

... Woodward contested the assessment solely on the basis that the medical records were being acquired from service providers.

A service provider can also be a retailer if it is regularly making sales of tangible personal property to consumers. 103 KAR 26:010(3).

The copies of medical records were tangible personal property. Sales of photocopies are subject to the sales and use tax. KRS 139.160, 103 KAR 27:020(1), 103 KAR 27:130(2). These copies were purchased by Woodward, and possession of the copies was transferred to Woodward for consideration. KRS 139.090, 139.120.

Woodward was the consumer of these copies, since it was using these copies in the course of providing professional legal services to clients. KRS 139.150, 139.190, 103 KAR 26:010(1 & 2). Since it was the consumer, use tax applies to Woodward's purchase of these copies. KRS 139.310.

Woodward did not argue or introduce any proof to support the application of the occasional sale exception.

Woodward contends the purchasing of these photocopies was the rendering of professional medical services.

The relevant legal issue is the essence of the transaction test. "The providing of a service is any transaction which includes both services and tangible personal property for a consideration where the performance of the service is the essence of the transaction." 103 KAR 28:051 Section 1(1).... In a situation where the essence of the transaction is service, the consideration is for the service and not for the transfer of title or possession of tangible personal property. KRS 139.090(1), 139.120(1).

In this case, the consideration paid by Woodward was for copies, which are tangible personal property. The consideration was not paid for providing medical services. The Board concludes the essence of the transaction involved the transfer of personal property to Woodward, and that use tax must be imposed on the transaction.

. . . .

The Board also notes there is no specific controlling case authority on the issue of photocopies of medical records to law firms. The Board concludes Revenue has not met its burden to show the propriety of imposing penalties of $1,652.20 for this assessment. KRS 13B.090(7).

Both Woodward and the Revenue Cabinet appealed to the Jefferson Circuit Court. The circuit court affirmed the assessment of the use tax, concluding that: "Woodward was seeking the property produced by the service. The essence of this transaction was not service but the transfer of possession of the personal property. Therefore, the use tax was properly imposed on the transaction." The circuit court determined that, as to the Revenue Cabinet's appeal, the protest of a penalty is in the nature of an affirmative defense and that some reasonable cause must be asserted by the taxpayer. The court held that the Board erroneously interpreted the law in this regard, and reversed and remanded for reinstatement of the penalty.

Woodward appeals. The facts are not in dispute. This case involves the construction and application of statutes—a matter of law which we review de novo. *Bob Hook Chevrolet Isuzu, Inc. v. Transportation Cabinet*, Ky., 983 S.W.2d 488, 491 (1998). Woodward contends that photocopies of medical records obtained from doctors and hospitals are not subject to the use tax because they were obtained from persons engaged in the business of rendering services—not retailers—and are incident to the total services provided.

The Revenue Cabinet responds that the purpose of the use tax is to "equalize the tax treatment" of purchases made outside of Kentucky and retail sales made in Kentucky which are subject to the sales tax under KRS 139.200. The Revenue Cabinet maintains that "without question" copies of the medical records at issue were tangible personal property and that purchases of photocopies are subject to the sales and use tax. The Revenue Cabinet contends that the "essence of the transaction" test applies, citing 103 KAR 28:051(1): "[t]he providing of a service is

any transaction which includes both services and tangible personal property for a consideration where the performance of the service is the essence of the transaction."[1] The Revenue Cabinet also relies upon two regulations which have no application to the facts of this case. [103 KAR 27:120(2) (tax applies to the selling price of additional photographer's prints) and 103 KAR 27:020(1) (tax applies to photostat copies, where "the article is produced to the special order of the customer, from materials furnished by the customer.")]

We begin our analysis by reviewing the applicable statutes and regulations. KRS 139.310 imposes a use tax upon "the storage, use, or other consumption in this state of tangible personal property purchased on and after July 1, 1990, for storage, use, or other consumption in this state at the rate of six percent (6%) of the sales price of the property."

KRS 139.330 imposes liability for the use tax upon the purchaser, and provides in pertinent part that "[e]very person storing, using or otherwise consuming in this state tangible personal property **purchased from a retailer** is liable for the use tax levied under KRS 139.310." (Emphasis added.) The sales and use tax scheme set forth in KRS Chapter 139 is not primarily designed to tax services. *Revenue Cabinet v. Joy Technologies*, Ky.App., 838 S.W.2d 406 (1992).

103 KAR 26:010 provides:

Section 1. Persons engaged in the business of rendering service are consumers, not retailers, of the tangible personal property which they use incidentally in rendering the service....

Section 2. **Persons rendering professional services are consumers, not retailers, of the tangible personal prop-**

---

1. That regulation deals with leases and rent-    als.

erty which they use incidentally in rendering their services. **Examples of such persons would be lawyers, architects, engineers, and accountants.** Section 3. If any of the above persons or enterprises, in addition to using property incidentally in connection with rendering services, are regularly engaged in selling tangible personal property to consumers, they are retailers with respect to such sales, and they must obtain permits, file returns and remit tax measured by such sales.

(Emphasis added.)

■ We are persuaded by Woodward's argument that providing copies of medical records is merely incidental to the service rendered. A patient's medical records do not exist independently of the medical service rendered. The records cannot be released without the patient's consent. The records, themselves, have no intrinsic value. In essence, their only value is evidence of the services rendered—diagnosis and treatment—the product of the medical provider's skill.

In a recent decision, the Kentucky Supreme Court explained that "[t]he use tax is frequently called a backstop to the sales tax because it ensures that transactions in other states are treated just as if they had taken place in this state and been subjected to the sales tax." [Citation omitted.] *Revenue Cabinet v. Lazarus, Inc.,* 49 S.W.3d 172, 175 (2001). We cannot say that the transactions *sub judice* would be subject to the sales tax had they taken place in this state. The Attorney General has ruled that it is improper to charge sales tax on photocopies of medical records provided under the Open Records Act, because it is not a "sale."

In 98–ORD–88, an inmate grievance was filed seeking reimbursement of excess photocopy charges for certain medical records from the Kentucky State Reformatory ("KSR"). The 6% sales tax was charged on the photocopies. The Attorney General concluded that:

> KSR improperly charged ... sales tax for copies.... KRS 61.874(3) authorizes public agencies to "prescribe a reasonable fee for making copies of nonexempt public records ... which shall not exceed the actual cost of reproduction, including the costs of the media and any mechanical processing cost incurred by the public agency, but not including the cost of staff required." This provision has been interpreted to mean that the fee charged for copies should be based on the agency's actual expense, not including staff costs. The fee is thus limited to the proportionate cost of maintaining copying equipment by purchase or rental, and the supplies involved....
>
> **Providing copies of nonexempt public records is not a "sale" of the records. It is a compliance with the legislative mandate to make public records open and available for inspection and at a reasonable cost.** KRS 61.872(3); KRS 61.874(3). There is no provision in the Open Records Act that authorizes an agency to charge a sales tax for copies of public records provided pursuant to an open records request.

(Emphasis added.)

That ruling was reaffirmed in 99 ORD 102. There, the Kentucky State Penitentiary had imposed the 6% sales tax on copies of records.

> [I]n 98–ORD–88, this office addressed the issue of the propriety of a penal institution's imposition of a 6 percent sales tax on copies of records requested under the Open Records Act....
>
> . . . .
>
> That decision was not appealed, and therefore has the force and effect of law. KRS 61.880(5)(b).

We affirm that decision today. In enacting the Open Records Act, the Kentucky General Assembly imposed a duty on public agencies to furnish applicants with copies of nonexempt public records upon request and upon advance payment of the fee prescribed by KRS 61.874(3), including postage where appropriate. This office does not believe the General Assembly envisioned that the discharge of this statutory duty would be treated as a sale.

. . . .

[KRS 139.200] ... requires "retailers" to collect a 6 percent tax for the privilege of making retail sales. Conversely, KRS 61.874 places a "duty" on a "public agency" to provide copies of documents. The taxable event is exercising the privilege of making retail sales. Public agencies do not exercise such a privilege in providing copies of public records, but rather discharge a duty. We do not believe that in the context of a request for public records under the Kentucky Open Records Act, the legislature intended that public agencies should be equated with retailers, and applicants for public records should be equated with consumers.

■ This Court may give "great weight" to the reasoning and opinion expressed in Attorney General's opinions. *York v. Commonwealth,* Ky.App., 815 S.W.2d 415, 417 (1991). We find the reasoning of the Attorney General persuasive and analogous to the case *sub judice.* Specific statutes require medical providers to furnish copies of a patient's medical records and limit fees for photocopying the records. KRS 422.300 *et seq.* deals with medical records to be used in litigation. KRS 422.305(1) provides that a hospital records custodian served with a subpoena duces tecum may elect to furnish certified photocopies, in lieu of appearing and producing the original record:

Following such election, **the employee of the hospital** charged with the responsibility of being custodian of the original charts or records specified in the subpoena shall hold the originals available at the hospital, and **upon payment to the hospital of the estimated reproduction expenses** by the party causing service of the subpoena, or by any other party, **shall promptly deliver, by certified mail or by personal delivery, legible and durable copies, certified by said hospital employee, of all medical charts or records specified in such subpoena to the person specified in the subpoena.**

(Emphasis added.)

Kentucky law mandates that the patient or provider has standing to seek a protective order prohibiting or limiting the access and use of medical records, even after they are acquired by a third party. KRS 422.315 is entitled, "Patient may ask to prohibit or limit use of his medical records," and provides:

Any patient whose medical records or charts are copied and delivered pursuant to KRS 422.300 to 422.330, any person acting on his behalf, the hospital having custody of such records, or any physician, nurse or other person responsible for entries on such charts or records shall have standing to apply to the court or other body before which the action or proceeding is pending for a protective order denying, restricting or otherwise limiting access and use of such copies or original charts and records. Such patients, persons, hospitals, physicians or nurses who are not parties to the action or proceeding and who wish to apply for a protective order may petition to intervene in the action or proceeding and

simultaneously apply for such a protective order.

KRS 422.317(1) provides that a patient's medical records be provided upon written request, and limits the charges for furnishing a second photocopy of the patient's record.

> Upon a patient's written request, a hospital licensed under KRS Chapter 216B or a health care provider shall provide, without charge to the patient, a copy of the patient's medical record. A copying fee, not to exceed one dollar ($1) per page, may be charged by the health care provider for furnishing a second copy of the patient's medical record upon request either by the patient or the patient's attorney or the patient's authorized representative.

The Legislature has also mandated that medical records be furnished upon written request, and limits the charges for copies, under the Workers' Compensation Act. KRS 342.020(8) provides that "any physician, psychiatrist, chiropractor, podiatrist, hospital, or health care provider shall, within a reasonable time after written request ... provide the requesting party with any information or written material reasonably related to any injury or disease for which the employee claims compensation." KRS 342.035(7) provides that "any medical provider shall charge only its customary fee for photocopying requested documents" which shall not exceed fifty cents per page.

We cannot determine from the parties' briefs which states were involved in Woodward's requests for copies of medical records—only that Woodward obtained copies of medical records from out-of-state physicians and health care providers, "on behalf of patients or in defense of patients' claims in litigation of [injury] cases...." Other states have laws, similar to Kentucky's, governing the provision of photocopies of medical records. For example, Illinois requires hospitals and physicians to furnish photocopies of medical records upon written request and limits the charges for photocopying. 735 ILL. COMP. STAT. 5/8–2001; 5/8–2003 (Lexis 2001). Indiana permits the custodian of hospital records to furnish certified photocopies of the requested records in lieu of appearing and producing the original record, as does Kentucky, and limits charges for photocopies of hospital records. IND. CODE ANN. § 34–43–1–5 (Lexis 2001); IND. CODE ANN. § 34–43–1–13 (Lexis 2001); IND. CODE ANN. § 16–39–9–3 (Lexis 2001). We do not believe that our Legislature intended for medical providers furnishing copies of patient records in compliance with a statute to be equated with retailers, nor do we believe that applicants for such medical records should be equated with consumers.

We conclude that the circuit court erred, as a matter of law, in holding the use tax was properly imposed on the transactions at issue. In light of our decision herein, we need not reach the issue of the penalty. The judgment of the Jefferson Circuit Court is reversed.

ALL CONCUR.