The LOUISVILLE METRO DEPART-
MENT OF CORRECTIONS, Louis-
ville/Jefferson County Metro Govern-
ment, Appellant,

v.

Commonwealth of Kentucky; Kathryn
Maria KING; and Hon. F. Kenneth
Conliffe, Appellees.

No. 2006–CA–002032–MR.

Court of Appeals of Kentucky.

Sept. 28, 2007.

Discretionary Review Denied by
Supreme Court Aug. 13, 2008.

Suzanne D. Cordery, Louisville, KY, for
appellant.

Michael R. Mazzoli, Louisville, KY, for appellee, Hon. F. Kenneth Conliffe.

Before NICKELL, STUMBO and THOMPSON, Judges.

*OPINION*

THOMPSON, Judge.

The Louisville Department of Corrections (the Department) appeals from an order of the Jefferson Circuit Court in which the Department was held in contempt of court and fined $160 after it refused an inmate, Kathryn Maria King, work release as required by the court's order. The Department alleges that it was within its supervisory function to deny King work release and that the contempt fine was not supported by the evidence. We disagree with both contentions and affirm.

King was indicted on one count of knowing exploitation of an adult, by complicity, a class C felony (KRS 209.990); and one count of theft by unlawful taking over $300, by complicity, a class D felony (KRS 514.030). As part of her guilty plea, she agreed to pay restitution in the amount of $89,300.

The court imposed a total sentence of eight years conditioned on an alternative sentence of ninety days to serve in the home incarceration program with work release and gambling addiction treatment release privileges. The court issued additional orders ordering that King make total restitution of $89,300, $40,000 of which was to be generated from the sale of a house to be consummated no later than August 31, 2007. The court ordered the remainder of the restitution to be paid monthly of an amount not less than $150 per month to begin November 15, 2006, and to continue each month thereafter until paid.

On September 14, 2006, the court issued an order committing King into the Department's custody to serve ninety days on home incarceration with work release. During the Department's initial interview, King explained that she had worked steadily for the past four months at a variety of positions secured for her by a temporary agency, Aerotek. The Department then informed her that its policy did not permit her to be released to work through a temporary agency until she obtained a special court order.

Advised by King's counsel that she had not been permitted work release, the circuit court contacted the Department and was informed that King could not be released to work for a temporary agency without a special court order. The court then issued a show cause order requiring that the Department's chief, Tom Campbell, appear in court on September 18, 2006, to show cause why he should not be held in contempt for interfering with the order of the court.

At the show cause hearing, the Department conceded that there was no law, regulation or general order requiring King to secure a special order before being permitted to work through a temporary agency. Instead, the policy arose from a rule established by the Jefferson District Court Chief Judge in the mid–1990's which prohibited work at temporary jobs under district court work release orders. However, that order lapsed when the subsequent chief judge declined to renew it. Yet, the practice continued and eventually it became an unwritten policy of the Department that "work release" required that the defendant obtain gainful employment without the aid of a temporary service. The Department justified its policy on the basis that prisoners employed through temporary agencies are a security risk because the workers are not monitored.

The circuit court was unpersuaded by the Department's rationale that temporary workers are necessarily a security risk. It stated that a temporary worker's place of employment and work hours could be easily verified. The court found the Department to be in violation of its order and, since King earned ten dollars per hour and because she had lost sixteen hours of work as a result of the Department's refusal of work release, the Department was fined $160.

■ The contempt power of the courts is an inherent one with its origin found in English history. *See Arnett v. Meade*, 462 S.W.2d 940 (Ky.1971).

> As necessary to the due exercise of their functions, it was recognized at common law, and has been from time immemorial, that courts have the inherent power to enforce their processes and orders and so to attain the ends of their creation and existence.

*Id.* at 947, (quoting *Crook v. Schumann*, 292 Ky. 750, 167 S.W.2d 836, at 840 (1942)). The judiciary's contempt power extends to all branches of government. "No one, however, important or of whatever high position, is above the law." *Commonwealth, Department for Natural Resources and Environmental Protection v. Williams*, 536 S.W.2d 474, 476 (Ky.1976). Public officials are not exempt from its scope and must recognize the authority of court judgments and orders. *Id.*

■ The Department does not dispute the court's inherent contempt power. It contends, however, that it did not interfere with or disregard the court's order that King be released to work. The Department argues that its decision to deny King work release was an exercise of its supervisory power over incarcerees committed to its custody.

Although pursuant to KRS 532.210 incarcerees are subject to the decisions of the Department during the period of supervision, the terms of home incarceration, including work release, are within the sole discretion of the sentencing court. KRS 533.010 states that the *court* may order probation with the defendant to serve an alternative sentence which includes "home incarceration with or without work release for no more than twelve months." KRS 533.010(6)(b) (emphasis ours). The Department has the authority to supervise those on work release; the initial grant or denial of work release is a part of the sentence which only the court can impose. The statute specifically states that the jailer may deny work release privileges only for "violating standards of discipline or other jail regulations" and further provides that the Department of Corrections develop written criteria for work release privileges. KRS 533.010. Accordingly, The Justice Cabinet's corresponding regulation describes in detail when the jailer may deny work release including:

(1) The defendant returning to the jail under the influence of drugs or alcohol.
(2) The defendant promoting or attempting to promote contraband.
(3) Failure to notify the jailer of any change in the status of his employment.

In such an event, the jailer must report the action taken and the details of the violation to the court within five (5) days. KRS 533.010(13). There is no language in the statute conferring upon the Metro Department of Corrections the unilateral authority to deny work release based on an unwritten policy precluding incarcerees' employment through temporary agencies.

■ Our decision is consistent with two Kentucky Attorney General opinions interpreting a jailer's authority under KRS 439.179; the misdemeanor work release statute. While we are not bound by opin-

ions of the Attorney General; this court can, however, afford them great weight. *Woodward, Hobson & Fulton, L.L.P. v. Revenue Cabinet,* 69 S.W.3d 476, 480 (Ky. App.2002). The opinions addressing the jailer's work release authority under KRS 439.179 are well-reasoned and aptly express the scope of such authority.

In both instances, the Attorney General opined that work release is in the discretion of the sentencing court and that in the absence of breach of discipline rules or other jail regulation, the jailer must comply with the court's order. Ky. OAG 79–564; Ky. OAG 84–306. The Attorney General further advised that if the jailer believes a prisoner poses a security risk, the court should be informed of the reasons for the belief which are to be considered by the court when making its determination of work release. Ky. OAG 79–564, pg. 2.

When the legislature drafted KRS 533.010, it did so with language identical to that applicable to misdemeanor work release. Under both statutes, the jailer is given supervisory power over incarcerees ordered to work release by the court and is to act as advisor to the court. When the jailer believes that work release poses a security risk or there is a violation of a standard of discipline or jail regulation, the court should be informed. However, the decision to grant or deny work release can only be made by the sentencing court.

We affirm the circuit court's finding that the Department was in contempt of its order. Likewise, we find no abuse of discretion as to the imposition of a fine of $160. An injured party in a contempt proceeding can be awarded compensatory damages or a fine. *White v. Sullivan,* 667 S.W.2d 385, 387 (Ky.App. 1983). It is a remedial measure which serves the purpose of forcing compliance with the court's order or to compensate for losses or damages caused by noncompliance. *Id.* (citing *Southern Railway Company v. Lanham,* 403 F.2d 119, 124 (5th Cir.1968)).

The court calculated the income lost by King as a result of the Department's failure to release her to work. It was not necessary, as suggested by the Department, that there be evidence that without the payment of the fine, King would be unable to make her first restitution payment. It is sufficient that the Department's refusal to abide by the order of the court resulted in an economic loss in the amount of $160.

Based on the foregoing, the order of the Jefferson Circuit Court is affirmed.

ALL CONCUR.