**Wayne Allen EPLION, Appellant,**

v.

**Joe BURCHETT, Appellee.**

**No. 2009–CA–001741–MR.**

Court of Appeals of Kentucky.

Nov. 4, 2011.

---

Wayne Allen Eplion, Sandy Hook, KY, pro se.

C. Phillip Hedrick, Catlettsburg, KY, for appellee.

Before ACREE and STUMBO, Judges; LAMBERT,[1] Senior Judge.

## OPINION

ACREE, Judge:

The issues on appeal in this open records dispute are twofold. First, we must ascertain whether the circuit court properly denied Wayne Allen Eplion's petition for a declaration that he is entitled to production of records regarding his stay in the Boyd County Detention Center. Second, we must determine whether the circuit court's denial of Eplion's demand for assessment of a monetary penalty against various detention center officials (hereinafter collectively referred to as "the officials") is supported by the law. Finding merit in Eplion's claim against the Boyd County Detention Center under Kentucky's Open Records Act, but also finding that he waived the only ground for reversing the penalty ruling, we affirm in part, reverse in part, and remand for entry of an order consistent with this opinion.[2]

---

1. Senior Judge Joseph E. Lambert sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statute (KRS) 21.580.

2. Eplion's appellate brief also suggests the officials committed several criminal violations, including unsworn falsification to authorities, KRS 523.100; official misconduct,

KRS 522.020; and tampering with a public record, KRS 519.060(1)(b), (c). We will not consider these arguments because they were not presented to the circuit court as a basis for assessment of a penalty. *Skaggs v. Assad, By and Through Assad,* 712 S.W.2d 947, 950 (Ky.1986) (citing *Combs v. Knott County Fiscal Court,* 283 Ky. 456, 141 S.W.2d 859 (1940)). As far as we are aware, no criminal

## I. *Facts and procedure*

Pending trial for two charges of sodomy, Eplion was held in the Boyd County Detention Center from April 2001 to September 2002. He was convicted and transferred to the Little Sandy Correctional Complex for completion of his sentence. Eplion then apparently filed an unsuccessful collateral attack of his conviction by way of Kentucky Rule of Criminal Procedure (RCr) 11.42, although it is not clear from the record precisely when this happened. Wishing to mount another collateral attack on his conviction, Eplion filed with the Boyd County Detention Center an open records request dated December 13, 2006, seeking production of a series of records.[3] Eplion believed the records would show that his trial counsel's representation had been deficient, in part, because the attorney failed to visit often enough to adequately prepare for trial.

Eplion did not receive a response from the detention center within the statutorily-prescribed three days, and he appealed the matter to the Office of the Attorney General (OAG) on December 29, 2006. The Boyd County Detention Center's response to Eplion's claim before the OAG, made through its attorney, was as follows:

> In discussing the matter with Boyd County Detention Center [personnel] these records that have been requested were generated and existed during a prior administration. They are either unaware of any records being in existence or are not presently able to locate the records being requested....

> [C]onsidering these records were the records of a prior constitutional office holder I believe he would be the proper custodian of the records if he were still subject to compliance rather than the current administration. Nevertheless, in demonstrating good faith, I have instructed the Detention Center to locate all records pertaining [to Eplion's request]....

> We hope the foregoing is satisfactory. Our specific response is that the Detention Center and present jailer are not the custodian of the records requested, and, frankly, I am not sure who the custodian is or would be. Also, again, some of these records probably don't exist and never have while others would have been kept in the normal course of business. We are trying to locate any that we can for Mr. Eplion on himself.

Ky. Op. Atty. Gen. 07–ORD–020, 2007 WL 530212 (Ky.A.G.), pp. 1–2.

The OAG determined that the detention center had committed a number of procedural and substantive violations of the Act and that the above response evinced a misunderstanding of the obligations of the agency and its officials. In particular, the OAG concluded the detention center had failed to respond to Eplion's request in a timely manner, KRS 61.880(1); had failed to provide him with a detailed explanation of why officials were unable to render a

---

charges have been filed in connection with the officials' failure to produce records.

**3.** Specifically, Eplion requested "all medical records (physician, nursing, psychiatric, or pharmaceutical), housing and cell assignment records, movement and transport records, disciplinary records, log entries (including legal mail, telephone, visitation, attorney conferences, investigative interviews or conferences/meetings or otherwise designated conferences, meetings, or interviews), personal property records, booking records, dietary records, noted observations, and all information regarding staff supervision (including relevant staffing schedules) related to or associated with the incarceration of Wayne Allen Eplion ... between the dates of April 2001 and September 2002." Ky. Op. Atty. Gen. 07–ORD–020, 2007 WL 530212 (Ky.A.G.), p. 1 (footnote omitted).

decision regarding production of the records within the three-day period, KRS 61.872(5); had failed to set a date certain when Eplion would be able to review the records, KRS 61.872(5); and had failed to maintain the records as required by KRS 171.680(1) and KRS 64.830.

The OAG informed the officials that the records requested belonged not to the past or present jailers as individuals, but to the agency, and that they had an obligation to maintain the records amassed by their predecessors. 07–ORD–020, 2007 WL 530212 (Ky.A.G.), p. 6 (citing 76 C.J.S. Records § 2 ("[a] written memorial of a transaction in a public office, when made by a public officer, becomes a public record *belonging to the office,* and not his private property")). As a result of the OAG's order, detention center officials were required to complete training with the Kentucky Department for Libraries and Archives regarding their duties of recordkeeping and disclosure under the Act.

Following disposition of the administrative action, Eplion filed in the Boyd Circuit Court an original action against various officials of the detention center, citing the authority of KRS 61.882. In his complaint, Eplion demanded a declaration that he was entitled to the records he had requested in December 2006. He also sought assessment of some $1.2 million in penalties for the officials' failures to comply with open records laws.

In a document filed on April 11, 2008, the officials responded that the records were not available and/or not in jailer's possession because they were

apparently removed, destroyed[,] or lost during the transition between jailers which even the Court can recall was a difficult transition and at a time when it would not be surprising to find that the new incoming jailer, Joe Burchett, Respondent herein could not find things that should have been left behind as records of the facility as opposed to records of the office holder.

In a hearing conducted in May 2009, the officials represented that they had made efforts to locate the records but were unable to do so. They further offered to contact the previous jailer to ascertain whether he knew what had become of the records.

The circuit court ruled that Eplion was not entitled to a declaratory judgment because "the records do not exist and therefore cannot be produced[.]" The circuit court also found that even if those records did exist, and if they were provided to Eplion, he would not be successful in mounting a collateral attack of his conviction. Finally, the court *sub judice* declined to impose a monetary penalty upon the officials, finding, "an ongoing fine would not provide any incentive to produce [the records] since they cannot be produced."

Eplion appealed the matter to this Court. On appeal, he again asserts that he is entitled to relief pursuant to the Kentucky Open Records Act, namely, production of records from his stay in the Boyd County Detention Center and assessment of penalties against the officials who failed to comply with the Act.

## II. *Standard of review*

■ Whether an agency has complied with the disclosure requirements of the Open Records Act is a question of law subject to *de novo* review. *See Hahn v. University of Louisville,* 80 S.W.3d 771, 773 (Ky.App.2001).

The circuit court's findings of fact which underlie its legal conclusions will be reversed only if they were clearly erroneous. Kentucky Rule of Civil Procedure (CR)

52.01. "[C]learly erroneous means not supported by substantial evidence. Substantial evidence is evidence which, when taken alone or in light of all the evidence, has sufficient probative value to induce conviction in the minds of reasonable persons." *Hughes v. Kentucky Horse Racing Authority*, 179 S.W.3d 865, 871 (Ky.App. 2004) (citations and quotation marks omitted).

Upon a finding that the denial of records was in willful disregard of the Act, it is within the circuit court's discretion to assess penalties against the offending agency. KRS 61.882(5). We will reverse the denial of Eplion's request for penalties only if the circuit court abused its discretion. *Id.*

Finally, we must address the deficiencies of Eplion's brief on appeal. The officials object in their brief to Eplion's failure to cite to the record, and request that we review his appeal for manifest injustice only. In recent opinions, this Court has been inclined to reduce the standard of review on appeal, even for a party appearing *pro se*, for lack of compliance with the technical rules of appellate procedure. We note, however, that the decision whether to employ such measures is wholly within our discretion. *See Hollingsworth v. Hollingsworth*, 798 S.W.2d 145, 147 (Ky.App.1990).

Exercising that discretion, we decline to grant the officials' request for a reduced standard of review for a number of reasons. First, the record is neither large nor unwieldy, and we can readily find all the information we need with little difficulty, despite the deficiency of Eplion's brief. Second, the officials' brief is hardly the model of compliance—its "COUNTER-STATEMENT OF POINTS AND AUTHORITIES" does not comply with CR 76.12(4)(d)(ii), it contains only cursory citation to the record, in violation of CR 76.12(4)(d)(ii), and the brief's appendix contains no extruding tabs, as required by CR 76.12(4)(d)(v). We see no reason to punish the appellant for deficiencies in his brief but ignore those of the appellees. Finally, the outcome of this appeal would be the same even under the manifest injustice standard. Reducing the standard of review would yield no benefit to the officials or, more importantly, to the administration of justice.

### III. *Declaratory judgment*

■ Two issues on this matter have been raised in Eplion's brief: (1) whether the circuit court's factual determination that the records do not exist was proper and (2) whether the circuit court correctly concluded that Eplion was not entitled to a declaratory judgment. We will address each matter in turn.

At the hearing, the officials presented evidence that, despite having diligently searched the jail on several occasions, they were unable to locate any physical records regarding Eplion's stay in the detention center.[4] Eplion presented no evidence that the records did in fact exist.

The conclusion that the requested records do not currently exist is a determination of fact we are not inclined to disturb. Although Eplion is correct that many of these records should exist, or at least should have existed at one time, and perhaps were improperly destroyed, the circuit court's conclusion was not erroneous given the evidence presented.

After finding that the records no longer existed, the circuit court concluded Eplion

---

4. They also revealed that they had located some digital records regarding Eplion and offered to provide those to him.

was entitled to no relief under the Act. That cannot be correct.

■ The first basis of the circuit court's conclusion that we must address was essentially that Eplion was not harmed by the officials' failure to produce the records. Eplion represented to the court *sub judice* that the reason he requested records from the detention center was to mount a collateral attack of his conviction under either RCr 11.42 or CR 60.02. The circuit court determined that any such attack would be unsuccessful for a number of procedural reasons.[5] Because Eplion could not achieve the ultimate purpose for which he sought the detention center records, concluded the court, he suffered no harm by the officials' noncompliance with the Act.

The lack of harm to Eplion is wholly irrelevant. Nothing in the Act conditions an individual's right to obtain public records on his purpose in seeking those records. *See, e.g., Kentucky Lottery Corporation v. Stewart,* 41 S.W.3d 860, 861 (Ky. App.2001) ("a public agency is not relieved of its duties under the Open Records Act simply because of actual or contemplated litigation."). Further, the propriety of assessing a penalty against non-compliant officials does not depend on whether harm befell the person who is denied records. KRS 61.882(5). Whether the detention center's failure to produce records resulted in harm to Eplion is irrelevant.

The other point expressed in the circuit court's order was that, because the records no longer existed—and irrespective of whether they were destroyed improperly—the officials had no further obligation to Eplion. This is not so.

The OAG has held, and we agree, that when it is determined that an agency's records do not exist, the person requesting those records "is entitled to a written explanation for their nonexistence." Ky. Op. Atty. Gen. 10–ORD–078, 2010 WL 1538882 (Ky.A.G.), p. 2.[6] The Act consistently requires agencies to respond in writing to open records requests, even when they are unable to supply the records requested. KRS 61.872(4), (5), KRS 61.880(1). Our holding is consistent with the purposes of the Act and the duties it imposes upon responsible officials.

The officials in this case offered to conduct additional investigations and to provide the circuit court and Eplion with a written explanation of their findings. During the hearing, officials proposed to contact the previous jailer of the Boyd County Detention Center to ascertain if he had retained any records, knew of their whereabouts, or could provide an explanation for their destruction. They further offered to contact the Department for Libraries and Archives to ascertain if the department's investigation had revealed what became of the records. The current jailer, appellee Burchett, stated his willingness to file an

---

**5.** The Boyd Circuit Court articulated the following reasons Eplion would be unsuccessful in his pursuit of a collateral attack of his conviction: (1) he had already raised a collateral attack pursuant to RCr 11.42 and was not permitted to bring another; (2) any challenges to his conviction were time-barred according to RCr 11.42(10) and CR 60.02; and (3) he was aware of his counsel's allegedly ineffective assistance prior to filing his original RCr 11.42 motion and was therefore precluded from raising them in a subsequent RCr 11.42 motion.

**6.** "While we are not bound by opinions of the Attorney General; this court can, however, afford them great weight." *Louisville Metro Dept. of Corrections v. King,* 258 S.W.3d 419, 421–22 (Ky.App.2007) (citation omitted). Our review of various OAG opinions regarding open records requests reveals that the OAG's handling of such matters is routinely carefully considered, clearly stated, and based upon a correct understanding of the law. We will cite to relevant OAG orders accordingly.

affidavit documenting what these additional measures revealed.

Given the Act's preference for providing written notice to requesters and the officials' offer to take additional steps in the spirit of the Act, it was erroneous for the circuit court to fail to include that relief in its order. Neither the record nor the briefs reveal whether the officials ever actually did what they offered to do, and in the absence of a court order, they could not be forced to do so. Eplion was entitled to relief in the form of a written explanation of the matters described in this opinion, and he was entitled to entry of a declaratory judgment to that effect.

### IV. *Eplion waived the issue of willfulness and is not entitled to an assessment of a penalty against the named officials*

■ The Open Records Act provides for the assessment of fees and penalties as follows:

> Any person who prevails against any agency in any action in the courts regarding a violation of KRS 61.870 to 61.884 may, upon a finding that the records were willfully withheld in violation of KRS 61.870 to 61.884, be awarded costs, including reasonable attorney's fees, incurred in connection with the legal action. If such person prevails in part, the court may in its discretion award him costs or an appropriate portion thereof. In addition, it shall be within the discretion of the court to award the person an amount not to exceed twenty-five dollars ($25) for each day that he was denied the right to inspect or copy said public record. Attorney's fees, costs, and awards under this subsection shall be paid by the agency that the court determines is responsible for the violation.

KRS 61.882(5). Eplion believes he is entitled to imposition of the penalty. The officials have raised no argument on this issue on appeal.

The circuit court declined to assess penalties against the officials because doing so "would not provide any incentive to produce [the records.]" Whether the assessment of penalties will have any coercive effect is not a proper consideration under KRS 61.882(5). Rather, the only basis upon which penalties may be awarded is a finding that the officials' noncompliance with the Open Records Act was willful. *Id.*

We will not reverse the circuit court's denial of Eplion's request for sanctions, however, because Eplion has never raised the issue of willfulness, and he has therefore waived the right to contest the error. Eplion never argued or presented evidence that the officials' noncompliance was willful, and it appears that at the evidentiary hearing in May 2007, he acknowledged that Jailer Burchett had no ill intent to deprive him of records.

Additionally, because Eplion never filed a motion pursuant to CR 52.02 requesting that the circuit court enter findings of fact regarding the willfulness of the officials' behavior, he has waived the right to have the absence of a finding of willfulness addressed on appeal. *Department of Corrections v. Courier–Journal and Louisville Times,* 914 S.W.2d 349, 352 (Ky.App.1996).

### V. *Conclusions*

We affirm the circuit court's refusal to assess a monetary penalty against the appellees; however, we reverse the circuit court's determination that Eplion was entitled to no relief under Kentucky's Open Records Act, and hold that once it has been determined that records requested under the Act no longer exist, the responsible agency is required to provide the

requester with a written explanation for the records' nonexistence. Upon remand, the circuit court shall enter an order consistent with this opinion.

ALL CONCUR.