## Walling v. Commonwealth.

(Decided June 18, 1935.)

HAFFORD E. HAY and J. M. WOLFENBARGER for appellant.

BAILEY P. WOOTTON, Attorney General, and RAY L. MURPHY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Affirming.

Under a verdict and judgment finding him guilty of the murder of George Carroll, Jeff Walling has been sentenced to life imprisonment and is appealing.

Some of the grounds urged for reversal call for a summary of the evidence. Elridge Rucker, a constable of Estill county, had appointed George Carroll as one of his deputies, and he had duly qualified as such. Later, however, an order or resolution was adopted by the city council of Irvine allowing Carroll the sum of $25 per month beginning April 1, 1934, "for services in connection with the police force." It appears in evidence that on Sunday, May 27, 1934, deceased received in-

formation that an automobile was being driven in a reckless manner and that its occupants were intoxicated. Upon receipt of this information, deceased, Eldridge Rucker, George Mays, a policeman of Ravenna, and Jeff Henderson, a deputy sheriff, were driven by a taxicab driver to Estill Springs in or near the northern limits of the city of Irvine. Arriving at that point, they drove up into a side road, and in a short time an automobile in which appellant, Lindsay Tipton, Everett Tipton, and Sam Canter were riding came from the opposite direction. The evidence for the commonwealth indicates that the automobile was yawing from one side of the road to the other, at times almost going into a ditch. The movements of the car led the officers to believe that the driver was intoxicated, and there is evidence of witnesses other than that of the officers that appellant and his companion were seen drinking out of a bottle shortly before the automobile reached Estill Springs and also evidence that immediately after the homicide occurred a broken jar or bottle was found in the automobile. After appellant and his companions passed, the officers got in their automobile, ran on ahead, and got out of their car with the purpose to apprehend them. It is undisputed that George Carroll stepped out in front of the automobile and held up his hand as a signal for it to stop, but there is a conflict in evidence as to what followed.

The evidence for the commonwealth indicates that, while the automobile did not come to a stop, it did slow down perceptibly, and, when it speeded up to go ahead, Carroll jumped on the running board, caught hold of the upright between the two doors, and commanded the driver to pull up to the curb. The occupants of the automobile were fighting and striking him and apparently trying to dislodge him, and one sleeve was torn from his shirt and it was otherwise badly torn. He swung out as far as he could from the side of the automobile, and was shooting at the rear tire in an attempt to puncture it. Two or three shots were fired from inside the automobile, one of which penetrated Carroll's head, causing him to fall from the running board, and he was dead when the other officers reached him. According to the evidence of officers, the shots coming from the automobile were fired by appellant. After deceased fell from the running board, the

automobile continued ahead at a rapid rate, followed by the officers, who were firing at the tires. One was punctured, the automobile ran into a ditch and partially overturned, and appellant and his associates got out and ran away.

Appellant testified that, when Carroll got on the running board, he thought Lindsey Tipton, who was driving the car, said, "What is this for George?" That deceased said, "Drive to the curb." Lindsey then said, "What is the matter?" and deceased replied, "It don't make a God damn, drive to the curb." Deceased then struck Lindsey in the temple with his pistol, knocking him over into the arms of his brother Everett Tipton, and the latter pushed him back upon the steering wheel; that deceased drew back to hit him again, and that he (appellant) said, "Don't do that George," and deceased said, "Don't ask me to do anything, God damn you I will kill all of you." Deceased struck him in the ribs with the pistol, and he fell and caught it, but deceased punched him several times and he let loose and fell back into Canter's lap; that deceased fired the pistol several times right up in his face; that, after deceased had fired a number of shots, Everett Tipton fired two or three shots, and, following these, deceased fell from the running board. Sam Canter testified that appellant had no pistol and did no shooting; that Everett Tipton fired three shots. Lindsey Tipton, the driver, testified that, when Carroll struck him in the head with his pistol, the blow addled him to such an extent that he did not know for some time what he was doing; that he had a pistol in a hip holster which he later discovered some of the others had taken; that he did not know who took the pistol or who fired the shots from the automobile, but did testify that Jeff Walling had no pistol and fired no shots. Canter and the two Tiptons were jointly indicted with appellant, and all of them were over 21 years of age, except Everett Tipton, who was about 17.

Since some of the grounds urged for reversal may be discussed together, we will not take them up in the order in which they appear in the brief. At the very outset it may be said that from the foregoing recital of the evidence it is clearly manifest that there is no merit in the contention that the verdict is not supported by, or is flagrantly against, the weight of the evidence. If the evidence of witnesses for the common-

182

wealth is to be believed, there is ample evidence to support the verdict, and the credibility of the witnesses as well as the weight to be given their evidence are matters exclusively within the province of the jury. Frasure v. Commonwealth, 250 Ky. 397, 63 S. W. (2d) 475; Allison v. Commonwealth, 196 Ky. 140, 244 S. W. 422.

It is further argued that deceased could not be a deputy constable and an employee of the city of Irvine at the same time, and that, when he accepted employment from the city, he automatically vacated his office as deputy constable; and further that he was not a policeman of the city because he had not reached the minimum age to qualify him for such office. Section 165 of the Constitution and section 3746, Kentucky Statutes, are cited in support of the theory that deceased could not be a deputy constable and an employee of the city at the same time. So much of section 165 as is pertinent reads:

"No person shall, at the same time, be a State officer or a deputy officer, or member of the General Assembly, and an officer of any county, city, town, or other municipality, or an employee thereof. * * *"

Section 3746 of the Statutes, after setting out certain county offices which are incompatible, follows substantially the quoted provisions of the Constitution. It will be noted from a reading of the Constitution and the statutory provisions relied on by counsel for appellant that they do not forbid a county officer being an employee of a city or town. It applies solely to state or deputy state officers and to members of the General Assembly. The section of the Constitution also forbids the same person holding two municipal offices at the same time, and the statute contains a like provision, and, in addition, further provides that no person shall at the same time fill a municipal office and a county office. It is not even contended that deceased was an officer of the city, and, since constables and his deputies are county officers, the constitutional and statutory provisions relied upon have no application.

It is further contended that the court erred in instructions given the jury in assuming that deceased was an officer. There is no dispute that he had been

appointed, had qualified, and was at the time acting, as a deputy constable. It is only contended by counsel for appellant that he vacated the office when the order was made by the city allowing him compensation for services in connection with the police force. Therefore what we have already said disposes of that contention, and in the proven circumstances the court did not err in the particular indicated.

It is further argued in effect that the officers were endeavoring to take appellant into custody in order to do him great bodily harm or to kill him, and that an instruction should have been given on that phase of the case, but this contention is wholly lacking in merit, since there is no evidence to warrant such an instruction.

It is urged that, since appellant did not know the official character of deceased, the offense at most could only be voluntary manslaughter, and authorities are cited in support of this contention; however, they have no application, since appellant admitted that he was acquainted with Carroll and his associates and knew at the time that they were officers.

Concerning the other criticisms directed at instructions, it may be said that there is evidence to indicate that appellant and his codefendants were intoxicated in the presence of the officers, and, if they were, the officers had a right to arrest them without a warrant. The instructions left it to the jury to determine whether they were intoxicated at the time. On the whole, the instructions properly submitted the issues, and counsel for appellant very frankly admit that they follow substantially forms that have been approved in like cases.

It is further contended that the court erred in permitting a witness to testify that she heard some of the occupants of the automobile in which appellant was riding make some threatening remarks. She stated that at the time she heard these remarks she was walking along the sidewalk and the automobile passed her going in the opposite direction, and that deceased was following in another automobile, and was apparently taking the license number of the automobile ahead. While no name was used in connection with the threatening remarks testified to by the witness, they indicated a purpose to do violence to some person, and, shortly after they were

made, Carroll was killed by some of the occupants of the automobile. In the circumstances, it is manifest that the court did not err in the admission of this evidence. Ellis v. Commonwealth, 146 Ky. 715, 143 S. W. 425; Whittaker v. Commonwealth, 17 S. W. 358, 13 Ky. Law Rep. 504; Young v. Commonwealth, 42 S. W. 1141, 19 Ky. Law Rep. 929.

The court permitted appellant to state that neither he nor any of the other occupants of the automobile were drunk, but sustained an objection when he was asked if he had violated the law in any way. It is urged that the court erred in sustaining the objection and in making a side remark which was prejudicial. It is manifest that the court did not err in sustaining objections to the question as propounded, and the record reveals no objection or exception to the alleged improper remarks made by the court.

Insistence that the court erred in not granting a new trial because of misconduct of the jury is not argued at length, but is dismissed with a statement in substance that the court may review this evidence and determine whether there was an abuse of discretion upon the part of the court. In support of this motion, affidavits of witnesses were filed to the effect that Jessie Rice and Frank Rice had expressed opinions as to the guilt of appellant before being accepted as jurors. The jurors denied they made the statements attributed to them in the affidavits, and there is evidence to indicate that one of the parties making an affidavit was very hostile toward the juror referred to in his affidavit. It is further shown that the reputation of these witnesses for truth, morality, etc., was not the best. There was an affidavit based on information that jurors while in charge of an officer were seen at the scene of the killing, pointing out objects, etc. The jurors were called and testified that while they were in charge of an officer they at different times walked out to Estill Springs and passed the scene of the homicide. A number of them testified that they did not know where the tragedy occurred, and others testified that it was not discussed as they were passing the place. The witness who gave the information on which the affidavit was based was called and testified that he saw a crowd of men at or near the point where the shooting occurred and that they were seemingly pointing out objects and

discussing the surroundings, but that he did not recognize any of the men or know whether they were officers or jurors.

One of the grounds for new trial was that the jury had been permitted to separate during their deliberations. The evidence shows that, while the jury was deliberating in a room adjoining the main courtroom and while court was in session, four or five of them, accompanied by an officer, crossed the courtroom to a toilet on the opposite side; that in going to and returning from the toilet no one conversed with the jurors and there was no discussion of the case among them. A large volume of evidence was taken concerning the alleged misconduct of the jury, and it leaves no doubt as to the propriety of the court's ruling on the motion and grounds for new trial.

Finding no error in the record prejudicial to appellant's substantial rights, the judgment is affirmed.

Whole court sitting.