## Lewis v. Commonwealth.

February 7, 1950.

James S. Forester, Judge.

Isaac Turner for appellant.

A. E. Funk, Attorney General, and Zeb A. Stewart, Assistant Attorney General, for appellee.

MORRIS, COMMISSIONER—Affirming.

Ind'cted on a charge of murdering one Bish Boggs, appellant was found guilty of manslaughter, the jury fixing the penalty at five years imprisonment. He asks a reversal of the judgment because the court erred: (1) In admitting incompetent evidence against him; (2) of misconduct of one member of the jury; (3) misconduct on the part of persons in the courtroom who made remarks tending to influence the jury, and lastly that the verd'ct is not supported by sufficient competent evidence.

The evidence may be better stated by first giving the defendant's version. The shooting of Boggs occurred on Pine Mountain in June 1949. Appellant, who lived in Leslie County, started from his home in the afternoon and stopped at the home of Anderson Burkhart, where he found Jim Blevins, and the two got in Will Burkhart's jeep and after driving to various places came to Garfield Burkhart's where they found Boggs and Bill Joseph, and these two, with appellant and Burkhart, went to a store and Boggs got out but was later picked up at another place. The party later came up with Nobe Langford in his car. Appellant says Boggs was drunk. Blevins said to Boggs, "Come on and we will get supper, and Boggs answered, 'No, I want to talk to Nobe.' When he sa'd this I was walking toward him and Boggs said 'Homer you s. o. b. you shot Lawrence.' He pulled a pistol and shot and I fell to the ground. When I came to myself, he was on top of me, and Jim had hold of the barrel of the pistol; that is when I shot. I was afraid of him. I shot to keep him from killing Blevins and me." He insisted that he and Boggs were friends.

Blevins, indicted for the same offense, testified for defendant, and after going through preliminaries he

said that after Boggs got out of their car and wanted to talk to Langford, appellant said, "Come on Bish, let's go." Boggs cursed and repeated the words which appellant had attributed to him, but adding, "I'm going to kill you," and came up with a pistol and shot Homer in the thigh. "I knocked the pistol off and caught hold of it and he shot me in here and in there. I stumbled and fell and he was on top of me; he had the pistol in my face and Homer shot him off me."

Bill Burkhart testified that two nights before the shooting Boggs was at his home and that he had a pistol and "he got to talking about Lawrence Boggs (a nephew) being killed; he said Homer Lewis, Paul Johnson and Ott Coldiron, if he didn't get to kill them then he would never die satisfied." He and appellant were cousins.

Joseph testified for the Commonwealth as had the others about their movements before they went up Pine Mountain. Reaching the point where and when Boggs went to Langford's car, he said appellant said to Blevins "Come on Bish is leaving or is getting away. Homer wanted Bish to get in the car. Bish went to stepping backward and Homer was walking toward him, and Bish said, 'No, I ain't getting in the car you killed Lawrence and now you want to kill me,' and pulled his pistol out and stepped back, and Homer went walking toward him. Bish throwed his pistol up and Blevins knocked it down and it fired; they wrestled and went over the hill, and some way Homer got his pistol out of the holster. They were still scuffling when Homer shot. He was 10 or 12 feet from Bish when he shot; he shot his pistol empty; Jim Blevins had Bish down when Homer shot him." He says Boggs' pistol was in the ground two or three feet from Boggs when appellant shot.

On cross-examination he said as far as he knew appellant and Boggs had been good friends. He also indicated that Homer was insistent that Boggs did not get away but should get back in the truck in which he was riding. He repeated that Boggs did not have his pistol in his hand when Homer shot him.

The theory of the Commonwealth, as appears throughout the record, is that appellant wanted to get rid of Boggs. Sometime before April of 1949 Lawrence

Boggs, a nephew of deceased, had been killed, but it was not known who committed the crime; that Boggs believed and had so expressed himself that appellant was a party to the killing. It is reasoned, therefore, that appellant was afraid that Boggs was correct in his belief and would like to get him out of the way.

In support of the theory the Commonwealth introduced the wife and son of deceased. Mrs. Boggs testified that on the night of March 26, at about 10:30, appellant came in the house. "He told Bish to put on his shoes and go to his car with him; Bish protested but went with him and I followed them, and listened to them talk. * * * Homer was drunk and tried to get him to drink whiskey, and he wouldn't drink. He tried to get him to go to Verda with him, and he wouldn't go. He said his (Boggs') sister believed he killed Lawrence, and asked if he believed it, and Bish said, 'No,' but his sister seemed to believe it. He started to the house and Homer came about half-way and then went on off." There were no objections to any questions which brought out the foregoing testimony, except to the question "what they said when they first came into the house." This was overruled.

The son testified, as had his mother, about appellant coming to the home and what had transpired. He said he followed them when they went to appellant's car and "Homer drew a pistol." There were no objections to questions and answers, but the defendant, by counsel, moved the court to withdraw the testimony and admonish the jury not to consider it, and the admission of the evidence of the boy and the mother is the subject of complaint.

In his motion for a new trial, appellant said the court allowed one of the jurors "Judy Pace to, and at two different times she deliberately got out of the jury box and retired out of the presence of the other jurors of the court, over the objections of defendant's counsel, and without asking the court, and the court overruled said objections and went on with the trial." The record does not otherwise show that objection was made at the time of the alleged departure of the juror from the box. It was first called to the court's attention on motion for new trial. The bill of exceptions does not show that any objection was made by counsel. The court in

overruling motion for new trial, said that he did not allow the juror to leave the room, but that she voluntarily got up and went to the toilet adjoining the courtroom and was gone not more than a half minute.

The juror filed her affidavit in which she said she left the jury box and went to the clerk's office near the courtroom and to the toilet; she talked to no one except to ask the clerk for a drink of water. She returned to the jury room at once. There was no error in the court's refusing to discharge the jury. Belcher v. Commonwealth, 247 Ky. 831, 57 S. W. 2d 988; Walling v. Commonwealth, 260 Ky. 178, 84 S. W. 2d 10.

There is a total lack of showing in any manner that relatives or friends of the deceased were in the courtroom at any time during the trial, or if they were and making remarks, the attention of the court was not called to the fact, hence we cannot consider ground 3.

As to ground (1) admission of incompetent evidence, as indicated above, the only objections to Mrs. Boggs' testimony was to the one question and we find nothing in the questions or answers which would constitute prejudice to the appellant's rights. The boy's testimony contained only one statement possibly objectionable; that was to the effect that appellant had or drew a pistol. We do not think this was of sufficient import to require reversal. There is evidence in the record to show that appellant thought that Boggs believed that he had been a party to the killing of Lawrence Boggs, and his actions on both occasions manifested that he was not on friendly terms with deceased, but was trying to get him in a strategical position to do him injury. The testimony was competent to show motive and state of mind.

While the proof adduced is close, it is conflicting. If the testimony of appellant and Blevins is true, then there was made out a fairly good case of self-defense. On the other hand, if the testimony of Joseph is true, and the jury was the judge of the truth or falsity of the conflicting evidence, then appellant was guilty, at the least of voluntary manslaughter. Joseph's proof appears to make appellant the aggressor, and though as stated by appellant and Blevins, that Boggs fired first, Joseph said that at the time Boggs was shot when he

and Blevins were wrestling Boggs had been disarmed or had dropped his weapon, then appellant was in no immediate danger.

We have written frequently that where the accused admits the killing of a person it is incumbent on him to satisfy the jury that he was at the time acting in his self-defense. Pitts v. Commonwealth, 215 Ky. 837, 287 S. W. 32, and he cannot avail himself of the defense if he was the aggressor, or started the difficulty and did not abandon it in good faith.

Hawley v. Commonwealth, 191 Ky. 380, 230 S. W. 296. He must also convince the jury that at the time of the killing he used no more force than appeared to him to be necessary to protect himself.

We have examined the instructions given and find them to be fair, perhaps a little more favorable to appellant than he was entitled to have. We note that the court fairly instructed the jury on the right, under the circumstances and proof, of the right of appellant to shoot in defense of Blevins. On the whole case we fail to find any error which would authorize or justify a reversal of the judgment.

Judgment affirmed.