RENDERED:  JANUARY 8, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1349-MR

CLARK COUNTY ATTORNEY                                                   APPELLANT


APPEAL FROM CLARK CIRCUIT COURT
v.        HONORABLE BRANDY O. BROWN, JUDGE
ACTION NO. 19-CI-00147


TRAVIS THOMPSON AND THE
CITY OF WINCHESTER, KENTUCKY                                      APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  MAZE, K. THOMPSON, AND L. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  The Clark County Attorney appeals from a decision of

the Clark Circuit Court which concluded that Travis Thompson may

simultaneously serve as a duly elected magistrate on the Clark Fiscal Court and a

police officer for the City of Winchester, Kentucky.  Examining the record and

applicable law, we conclude a Winchester police officer is a municipal employee,

not a municipal officer.  Thus, we affirm, though our analysis differs from that employed by the trial court.

In August 2018, the then-Clark County Attorney wrote a letter to the Kentucky Attorney General's office seeking an opinion as to whether a person may serve simultaneously as a City of Winchester police officer and a Clark County magistrate.  At that time, Thompson was a candidate for a Clark County magistrate and was scheduled to soon become a Winchester police officer.  The question was important because Kentucky Revised Statute (KRS) 61.080(3) provides that "[n]o person shall, at the same time, fill a county office and a municipal office."  It is undisputed that a magistrate is a county office, so the real issues was—and remains—whether a Winchester city police officer is a city officer or a city employee.  Before the Attorney General's office responded, Thompson took the oath of office to become a Winchester police officer in late August or early September 2018.  In November 2018, Thompson was elected as a Clark County magistrate.

On January 3, 2019, the Attorney General's office issued a letter, not a formal opinion, opining that the two positions "are neither constitutionally nor statutorily incompatible" because a Winchester police officer was an employee, not an officer.  Unfortunately, the letter did not discuss contrary authority, including numerous formal opinions of the Kentucky Office of the Attorney General (OAG)

which refer to municipal police officers as municipal officers. The next day, Thompson took the oath of office as a Clark County magistrate.

A week later, the new Clark County Attorney sent a letter to the Winchester Chief of Police opining that Thompson could not serve as a magistrate and city police officer. The County Attorney sent similar letters in February and March 2019. In response, Thompson was removed from his police patrol duties and placed on "desk duty."

In March 2019, Thompson filed a petition for declaration of rights, naming only the City of Winchester as a respondent, asking the Clark Circuit Court to declare that the "office of a City Police Officer is not an incompatible office with that of the Constitutional Position of Magistrate." Winchester filed an answer opining that the two positions were not incompatible. Soon thereafter, the Office of the Clark County Attorney successfully moved to intervene, over Thompson's objection.

Thompson soon filed a motion for judgment on the pleadings, arguing that older authority deeming a municipal police officer to be a municipal officer was "dated and cannot be relied upon as guidance[.]" Winchester filed a response agreeing with Thompson's position. However, the County Attorney filed a response in opposition to Thompson's motion, generally asserting that precedent referring to a municipal police officer as a municipal officer remained binding.

In August 2019, the trial court granted Thompson's motion, noting correctly that it was actually granting summary judgment to Thompson since matters outside the pleadings had been considered. *See* Kentucky Rules of Civil Procedure (CR) 12.03. The court did not discuss, or even cite, authority stating that a city police officer is a city officer. Instead, the court found Thompson did not meet the multi-part definition of an "officer" in KRS 83A.010(10). That definition, which has not been amended since its enactment in 1980, is as follows:

> "Officer" means any person elected to a position by the voters or any person appointed to a position which (a) is created by the Constitution, the General Assembly, or a city; (b) possesses a delegation of a portion of the sovereign power of government; (c) has powers and duties to be discharged which are conferred directly or by implication by the city; (d) has duties performed independently and without control of a superior power other than law; (e) has some permanency; (f) requires an official oath; (g) is assigned by a commission or other written authority; and (h) provides for an official bond if required by proper authority.

Particularly, the trial court held that it "strongly disagrees that a police officer performs duties independently and without control of a superior power other than the law." The Clark County Attorney then filed this appeal.[1]

---

[1] Thompson's brief does not contain a proper counterstatement of points and authorities, as required by CR 76.12(4)(d)(ii). Although we have elected to not impose any sanctions, we caution counsel to comply fully with the appellate practice rules in the future. Our guide to appellate practice and a checklist for appellate briefs is available on our website. https://kycourts.gov/courts/coa/Pages/coa.aspx (last visited September 14, 2020).

The only issue before us is whether Thompson the Winchester police officer is a municipal officer or a municipal employee. That distinction is crucial because the prohibition bars serving as both a municipal officer and county officer, not against being a municipal employee and a county officer. As Chief Justice John Marshall noted nearly two hundred years ago, "[a]lthough an office is 'an employment,' it does not follow that every employment is an office." *United States v. Maurice*, 26 F. Cas. 1211, 1214 (C.C.D. Va. 1823). *See also* 63C AM. JUR. 2D *Public Officers and Employees* § 2 (2020) ("There is a distinction between a public office and a public employment, and although every public office may be an employment, one can be a public employee or public servant without necessarily holding a public office.") (footnotes omitted). Determining whether a particular position is an "office" has long vexed Kentucky courts. *Black v. Sutton*, 301 Ky. 247, 250-51, 191 S.W.2d 407, 409 (1945) ("The line of demarcation between public office and public employment is oftentimes dim and the distinction between them as marked by judicial expression is not always clear.").

Resolving whether Thompson holds a municipal office requires us to analyze various statutory and constitutional provisions. As the proper interpretation of Kentucky statutes is an issue of law, our review is *de novo*. *Delphi Automotive Systems, LLC v. Capital Community Economic/Indus. Development Corp., Inc*., 434 S.W.3d 481, 485 (Ky. 2014). Of course, we also

review a trial court's decision to grant summary judgment *de novo*. *Feltner v. PJ Operations, LLC*, 568 S.W.3d 1, 3 (Ky.App. 2018).

We begin by addressing what the trial court inexplicably ignored: prior authority referring to municipal police officers as municipal officers. The Attorney General has consistently stated in multiple OAG decisions—without real analysis—that municipal police officers are municipal officers. Of course, an OAG is not binding on courts, though we often afford them "great weight." *Louisville Metro Dep't of Corrections v. King*, 258 S.W.3d 419, 421-22 (Ky.App. 2007). The Attorney General did not write on a blank slate as its sundry opinions were premised upon four appellate opinions.

The first, and primary, basis for the Attorney General's conclusions— and the County Attorney's position here—is *City of Lexington v. Rennick*, 105 Ky. 779, 49 S.W. 787 (1899). The issue in *Rennick* was whether the City of Lexington had validly reduced via ordinance the salary of police officers since section 161 of the Kentucky Constitution provides in relevant part that "[t]he compensation of any city, county, town or municipal officer shall not be changed after his election or appointment, or during his term of office[.]"

Obviously, section 161 would only apply if the salary of an officer, not an employee, were to be changed. But *Rennick* never addresses the crucial antecedent question of whether the Lexington police officers were city employees

or city officers. Instead, as explained in *Board of Education of Graves County v. De Weese*, 343 S.W.2d 598, 602 (Ky. 1960), the Court in *Rennick* seemed to assume *sub silentio* that the police officers were city officers. It is unclear whether the court did not discuss the municipal officer issue because it believed the conclusion that the police officers were municipal officers was obvious or because the parties did not raise that issue. Even though it contains no analysis of the subject whatsoever, *Rennick* has nonetheless been cited in at least nine OAG decisions as holding that city police officers hold city offices. These include Ky. OAG 81-48, 1981 WL 142329, at *1, which stated, "We believe that [police officers] continue to be municipal officers as held in . . . *Rennick*" and Ky. OAG 80-239, 1980 WL 103052, at *1, which concluded "[a] police officer is of course a nonelected municipal officer as held in a number of cases, among them being . . . *Rennick*[.]"[2] But the parties have not cited, nor have we independently located, a Kentucky appellate court decision using *Rennick* as a basis for that conclusion.

The second case cited sometimes by the Attorney General in its OAG decisions is *Arms & Short v. Denton*, 212 Ky. 43, 278 S.W. 158 (1925). In Ky.

---

[2] Additional examples include: Ky. OAG 84-290, 1984 WL 185690, at *1 ("members of the city police force are in fact municipal officers"); Ky. OAG 83-363, 1983 WL 166129, at *1 ("Police officers are for most purposes . . . municipal officers[.]"); Ky. OAG 81-307, 1981 WL 142117, at *2 ("Under Kentucky law a city policeman is considered to be a municipal officer[.]"); Ky. OAG 81-74, 1981 WL 142350, at *2 ("police officers are municipal officers as held in a number of cases, among them . . . *Rennick*"); Ky. OAG 78-708, 1978 WL 26262, at *1 ("The position of city polieman [sic] is of course a municipal office as held in numerous cases, among them being . . . *Rennick*[.]").

OAG 80-68, 1980 WL 102885, at *1, the OAG relied on *Denton* in stating that "[p]olice officers are officers in the technical sense."

In the unusual case of *Denton*, the chief police officer for the city of Burkesville, referred to as a city marshal, possessed the franchise to operate the city's public wharf and sued persons who operated a nearby competing private wharf. The private wharf owners alleged the city's contract with the marshal to operate the public wharf was invalid because of a statute generally preventing a city officer from contracting with the city. Kentucky's then-highest court found the city marshal to be a city officer. *Denton*, 278 S.W. at 159-60. Similarly, KRS 83A.080(2)(d) lists a municipal police chief as a nonelected city officer. But Thompson is not the chief of the Winchester police department, so *Denton* is of no real utility here. In fact, *Denton* has only been cited twice by a Kentucky appellate court, most recently ninety years ago, and neither time did the citing case involve a determination of the status of a city police officer. *See Wilson v. Blanton*, 226 Ky. 518, 11 S.W.2d 127 (1928); *Collinsworth v. City of Catlettsburg*, 236 Ky. 194, 32 S.W.2d 982 (1930).

Finally, there are two other cases cited at least once for the proposition that city police officers are municipal officers by the Attorney General in an OAG, *Thomas v. Thompson*, 102 S.W. 849 (Ky. 1907), and the more recent case of *McCloud v. Whitt*, 639 S.W.2d 375, 377 (Ky.App. 1982). *See* Ky. OAG

-8-

78-206, 1978 WL 26768, at *1 (relying on *Rennick*, *Denton* and *Thomas*); Ky.

OAG 84-290, 1984 WL 185690, at *1 (relying on *McCloud*).   However, neither

*Thomas* nor *McCloud* is of help here because, like *Denton*, they both involved

police chiefs.

The parties have not cited, nor have we independently located, any

additional Kentucky appellate court decisions addressing whether a municipal

police officer holds a municipal office.  Thus, the "leading" Kentucky precedent is

from the 1800s and does not contain any analysis of the issue.

We emphatically reject Thompson's unsupported argument that

"dated" authority somehow is not binding.  Indeed, we generally would be

"bound" by the silent assumption in *Rennick* that municipal police officers are

municipal officers, despite its utter lack of analysis.  *See* Kentucky Supreme Court

Rules (SCR) 1.030(8)(a).  However, the General Assembly changed the analytical

equation by enacting post-*Rennick* legislation.

Before we begin our statutory analysis, we must note that the

determination of whether a government employee is an officer "has to be on a

case-by-case basis, depending on the nature and importance of the office in

question." *Commonwealth ex rel. Hancock v. Clark*, 506 S.W.2d 503, 504 (Ky.

1974).  Consequently, we address only whether Thompson is an officer, not

whether all municipal police officers are, or are not, municipal officers.

In 1980, over eighty years after *Rennick* was rendered, the General Assembly enacted KRS 83A.010(10), which contains the previously discussed eight-element definition of "officer."[3]  But since Thompson was not elected to his police officer position, before analyzing the eight prongs of what defines an "officer" under KRS 83A.010(10), we must first address another statute which defines how a nonelected city office must be created.

Specifically, KRS 83A.080(1), which was also first enacted in 1980 and which was last amended in 2002, provides that "[a]ll nonelected city offices shall be created by ordinance which shall specify:  (a) Title of office; (b) Powers and duties of office; (c) Oath of office; and (d) Bond, if required."  It is undisputed that the City of Winchester Police Department was created by Winchester Ordinance 2-82(c).[4]  But the parties have not cited, nor have we independently located, a Winchester ordinance which specifies the title, powers, oath and bond (if required) for city police officers.  Instead, Winchester Ordinance 2-83 broadly

---

[3] KRS 83A.010 was amended in 1992, but those amendments did not substantively alter the definition of an officer.

[4] The ordinances discussed in this opinion are not in the circuit court record.  Nonetheless, we are permitted to "properly take judicial notice of public records and government documents, including public records and government documents available from reliable sources on the internet." *Polley v. Allen*, 132 S.W.3d 223, 226 (Ky.App. 2004) (citations omitted).  Winchester's website contains a link to an external site listing its ordinances. http://www.winchesterky.com/ (last visited September 14, 2020); https://library.municode.com/ky/winchester/codes/code_of_ordinances (last visited September 14, 2020).

-10-

provides that the police department "shall be supervised and staffed in accordance with the personnel and pay classification plan with such number of personnel as the board of commissioners from time to time authorizes[.]"  In short, there is no indication that Winchester enacted an ordinance creating the job of Winchester city police officer which would satisfy the mandatory requirements of KRS 83A.080(1).  Because Winchester has not met the statutory criteria to create a city office for its police officers, it is inescapable that Winchester police officers cannot be nonelected city officers.  And since police officers are not elected, that means they cannot be city officers at all.  Therefore, though the trial court and parties devoted the bulk of their analysis to whether Thompson satisfies the elements of an "officer" under KRS 83A.010(10), we need not engage in that analysis.

We recognize that some OAG decisions were issued after the initial enactment of KRS 83A.010 and 83A.080.  However, those decisions did not analyze *Rennick* in light of the new statutes and, in any event, we are not bound by them.

That is not the end of the matter, however, as two positions may be deemed incompatible under the Kentucky Constitution or our common law.  As Kentucky's then-highest court explained decades ago:

> There are two kinds of incompatibility between offices
> which have been recognized and applied in declaring the
> first office vacant upon acceptance of the latter.  The first
> is a constitutional or statutory incompatibility, which is

one so declared by the Constitution or legislative enactment. The second is a common-law or functional incompatibility, which is declared by courts without the aid of specific constitutional or statutory prohibition when the two offices are inherently inconsistent or repugnant, or when the occupancy of the two offices is detrimental to the public interest.

*Adams v. Commonwealth ex rel. Buckman*, 268 S.W.2d 930, 931 (Ky. 1954). The fact that Thompson's police position is not an "office" would seem to foreclose either constitutional or common law incompatibility, but we will briefly address those in the interest of completeness and to demonstrate how our KRS 83A.080 analysis is in alignment with other statutes, our Kentucky constitution, and our longstanding common law incompatibility precedent.

We readily find there is no constitutional incompatibility between Thompson's two positions. Section 165 of Kentucky's Constitution provides that:

No person shall, at the same time, be a State officer or a deputy officer or member of the General Assembly, and an officer of any county, city, town, or other municipality, or an employee thereof; and no person shall, at the same time, fill two municipal offices, either in the same or different municipalities, except as may be otherwise provided in this Constitution; but a Notary Public, or an officer of the militia, shall not be ineligible to hold any other office mentioned in this section.

Thompson is not a state officer, nor does he hold two municipal offices. Indeed, he does not hold any municipal office. Eighty-five years ago, Kentucky's then-highest court noted that section 165 "do[es] not forbid a county officer being an

-12-

employee of a city or town." *Walling v. Commonwealth*, 260 Ky. 178, 84 S.W.2d 10, 12 (1935). Thus, Thompson's dual employment does not violate section 165.

Similarly, Thompson's dual status does not violate KRS 61.080, which we have explained is the General Assembly's "construction of Ky. Const. § 165 . . . declaring which offices it deems incompatible." *LaGrange City Council v. Hall Bros. Co. of Oldham County, Inc.*, 3 S.W.3d 765, 769 (Ky.App. 1999) (citation omitted). KRS 61.080(3), the only potentially applicable portion of the statute, provides in relevant part that "[n]o person shall, at the same time, fill a county office and a municipal office." Again, there cannot be a violation of that statute since Thompson is not a municipal officer.

Finally, we also conclude Thompson's two positions are not incompatible under our common law. As we have explained, "[t]he question is whether one office is subordinated to the other, or whether the functions of the two are inherently inconsistent or repugnant, or whether the occupancy of both offices is detrimental to the public interest." *LaGrange City Council*, 3 S.W.3d at 769-70. For example, two positions would be incompatible "whenever one has the power of appointment to or removal from the other and whenever there are any potential conflicts of interest between the two (2), such as salary negotiations, supervision and control of duties, and obligations to the public to exercise independent judgment." *Id.* at 770 (footnote omitted). *See also Webb v. Carter County Fiscal*

-13-

*Court*, 165 S.W.3d 490, 493 (Ky.App. 2005) ("The doctrine of incompatibility bars an individual from holding both public office and public employment where one position is subordinate to the other or is subject to the audit or review of the other.").

The Clark County Attorney argues vaguely that "such subordination occurs primarily because of [Thompson's] role in budgetary decisions as a Clark County magistrate[.]" It is unclear what budgetary decisions the Clark County Fiscal Court may make regarding the City of Winchester Police Department. The County Attorney asserts there are interlocal agreements between Winchester and Clark County which may require Thompson to "vote on policy which then governs his actions as a police officer (such programs as BACKUPPS provide the possibility for jurisdictional overlap)[.]" But the County Attorney only states that Thompson the magistrate hypothetically could be required to vote on some unspecified matters on unspecified dates which could have some sort of unspecified impact on Thompson the police officer. The County Attorney has not shown how the fact that city police officers may, pursuant to interlocal agreements, sometimes carry out their duties outside the city limits means a county magistrate has power to impact a municipal police department.

Based on the limited record before us, the interplay between Thompson's dual roles as a magistrate and police officer is extremely attenuated.

-14-

The Clark County Attorney argues in his reply brief that some funding for his office comes from the Clark Fiscal Court. But the County Attorney provides no concrete evidentiary support for his argument. A party opposing summary judgment must provide "significant evidence[,]" not merely argumentative "speculation and supposition[.]" *Blackstone Mining Co. v. Travelers Ins. Co.*, 351 S.W.3d 193, 201 (Ky. 2010) (citations omitted).

Similarly, the County Attorney relies upon a portion of his affidavit which provides that in July 2019, the City of Winchester:

> approved a joint City and County Emergency Services budget expansion which would require the County Fiscal Court, by and through, Magistrate Thompson as [a] fiscal court member, to approve payment of $160,000.00 plus county dollars to support his city employer's budget. The City's budget expansion and need for additional county dollars was not funded by the Fiscal Court and thereby Magistrate Thompson acted to determine the budget for Section 23 as identified in the City's affidavit [section 23 apparently pertains to dispatch and 911 services].

The affidavit is difficult to understand with precision.

As we understand it, Winchester approved a budget which would require the County to help fund emergency services. It is unclear whether the Clark Fiscal Court voted on the measure. The affidavit contradictorily states the measure "was not funded by the Fiscal Court" and then states, "Magistrate Thompson acted to determine the budget for Section 23[.]" It is unclear how

-15-

Thompson the magistrate determined a budget for a measure which was not funded by the Clark Fiscal Court. It is also unclear how the emergency services budget directly impacts Thompson. In short, the County Attorney has not shown a sufficient nexus between Thompson the police officer and Thompson the magistrate for us to find the positions to be irredeemably incompatible under common law principles.

Finally, we reject the County Attorney's argument that KRS 61.310(4) prevents Thompson from holding both jobs. That subsection permits off duty peace officers to "act in any private employment as guard or watchman or in any other similar or private employment."[5] The County Attorney cites no authority supporting his position that permitting private employment wholly precludes any type of non-incompatible public employment. In fact, our Supreme Court has concluded the statute "merely create[s] general off-duty employment rights" and that "the General Assembly did not intend to authorize police officers to engage in employment which conflicts with their official duties." *Puckett v. Miller*, 821 S.W.2d 791, 794 (Ky. 1991). As we have explained, Thompson's magistrate duties do not conflict with his police officer duties. There are abundant limitations on who may hold public offices, as the various authorities discussed in

---

[5] KRS 61.310 formerly prohibited police officers from accepting private employment as, among other things, security guards.

this opinion amply demonstrate. There is no indication this statute was intended to supplement or contravene the system governing the type of public offices which a municipal employee, such as a peace officer, may hold.

We decline the County Attorney's invitation to apply the *expressio unius est exclusio alterius* canon of statutory construction, under which "mention of one thing [here, private employment] implies the exclusion of another [here, public employment][.]" *Fox v. Grayson*, 317 S.W.3d 1, 8 (Ky. 2010) (citation omitted). We only utilize canons of statutory construction when statutes are ambiguous. *Id.* at 8-9. KRS 61.310 is unambiguous and thus *expressio unius est exclusio alterius* is inapplicable.

Although not cited by the parties, the County Attorney's stance that Thompson cannot hold both positions does not square well with KRS 95.015, which states that city police officers "shall not be restrained from exercising their rights and privileges or from entering into any endeavor enjoyed by all other citizens of the city in which they reside." The Kentucky Attorney General has interpreted that statute to be broad in scope, stating it "relates to rights of police officers and fire fighters to perform without restriction whatever work they choose during their off duty hours." Ky. OAG 83-130, 1983 WL 166388, at *1. *See also* Ky. OAG 83-90, 1983 WL 166348, at *1 ("Thus municipal officers have the right under KRS 95.015 and 61.310(4) to seek and obtain outside employment during

-17-

their off-duty hours without any restrictions or limitations being imposed by local governmental units, so long as it does not interfere with the performance of their official duties."). Thus, city police officers, who are not city officers, may seek off-duty public employment unless otherwise barred by application of a constitutional or statutory provision or applicable precedent.

Obviously, this does not mean that police officers can undertake *all* additional employment at *all* times from *all* potential employers. As our Supreme Court noted, "[i]t is widely recognized that the rights of public employees may be abridged in the interest of preventing conflicts with official duties or promoting some legitimate interest of the governmental employer. . . . Prohibition of certain types of employment is one means of preventing conflicts of interest and a decline in community respect for the police." *Puckett*, 821 S.W.2d at 793-94. For example, KRS 61.080(1) prevents, among other things, a municipal employee, such as Thompson, from simultaneously being a member of the General Assembly. Instead, KRS 95.015 generally allows police officers the same employment opportunities as other persons, and the employment opportunities of all persons are subject to applicable statutory or constitutional limitations.

In conclusion, as the trial court aptly noted, the County Attorney has not shown how Magistrate Thompson has "authority to vote on matters involving the city, its operations, or its employees, including, without limitation, promotions,

benefits or compensation." Instead, Thompson's two positions are "distinct, independent, separate, and unrelated in form and function."

For the foregoing reasons, the Clark Circuit Court is affirmed.

THOMPSON, L., JUDGE, CONCURS.

MAZE, JUDGE, CONCURS IN RESULT AND FILES SEPARATE OPINION.

MAZE, JUDGE, CONCURRING IN RESULT: I agree with the majority's conclusion that the Clark County Attorney failed to show that Thompson's dual service as a Winchester Police Officer and as a Clark County Magistrate is constitutionally, statutorily, or functionally incompatible. However, I would add that the Clark County Attorney is right to be concerned about the potential conflict. Moreover, this is not a simple or clear-cut question. Consequently, our determination must be based on the circumstances and evidence presented in this particular case. While this analysis will be useful in other cases, I must emphasize that the outcome of this case is not necessarily indicative of the appropriate result in other cases.

As the majority correctly notes, the Legislature has set out the controlling definition of a municipal "officer" through its enactment of KRS 83A.010(10). Thus, the older authority suggesting that police officers are municipal officers is no longer applicable. In the current case, the only dispute is

whether a municipal police officer "has duties performed independently and without control of a superior power other than law . . . ." I agree with the majority that the answer to this question lies with reference to the applicable Winchester City Ordinance. As a city police officer, Thompson is subject to the authority of his superiors within the department and the Board of Commissioners. However, this may not be the case with all positions in every municipal police department.

Similarly, I agree with the majority's conclusion that the positions of Winchester Police Officer and Clark County Magistrate are not functionally incompatible. There is a reasonable dispute whether the Fiscal Court exercises an indirect control over portions of the budget of the department. However, the County Attorney has failed to show that this control amounts to a disqualifying conflict of interest. But again, I must caution that this analysis is fact-specific. Therefore, I would limit the holding to the facts of this case.

| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEE TRAVIS THOMPSON: |
|---|---|
| Rob Johnson Georgetown, Kentucky | Brian N. Thomas Winchester, Kentucky |
| | BRIEF FOR APPELLEE CITY OF WINCHESTER, KENTUCKY: |
| | William A. Dykeman Winchester, Kentucky |