RENDERED: JUNE 18, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1908-MR

BRANTLEY DUNAWAY                                         APPELLANT

v.

APPEAL FROM JEFFERSON CIRCUIT COURT
FAMILY COURT DIVISION
HONORABLE LAUREN ADAMS OGDEN, JUDGE
ACTION NO. 13-CI-502108

MISTI MADISON CORK AND
MELANIE STRAW-BOONE                                     APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, DIXON, AND TAYLOR, JUDGES.

TAYLOR, JUDGE: Brantley Dunaway brings this appeal from Orders dated

November 15, 2019, December 3, 2019, December 9, 2019, and December 16,

2019, of the Jefferson Circuit Court, Family Court Division, adjudicating several

post-dissolution motions. We affirm.

## BACKGROUND

This appeal is from a post-dissolution proceeding, and we will only recite those facts necessary for resolution thereof. The parties were divorced by decree entered January 15, 2015. At the time of the divorce, Dunaway and Misti Madison Dunaway (Cork) were awarded joint custody of their two minor daughters. The family court adjudged that the children would reside primarily with Cork in Louisville, and Dunaway would exercise parenting time one weekend per month during the school year, liberally during the summer, and on most holidays. During the divorce proceeding, Dunaway relocated near Atlanta, Georgia. Accordingly, the family court ordered the parties to equally share in the transportation of the children to and from Georgia for Dunaway's timesharing. The family court ordered Dunaway to pay child support of $1,483.52 per month and to provide the children with medical insurance. Subsequently, Dunaway filed a motion to reduce child support, and by Order entered on November 16, 2016, the family court reduced Dunaway's child support payment to $1,298.34 per month.

To say the least, court proceedings since the parties' divorce have been contentious. The parties have filed various motions relating to child support, transportation issues, and contempt for Dunaway's failure to abide by court orders as to child support and medical insurance. Relevant to this appeal, Cork filed a motion seeking the family court to order Dunaway to solely provide transportation

of the children to and from Georgia for his timesharing. In support of the motion, Cork alleged that Dunaway harassed individuals she sent to Georgia to pick up the children on her behalf. Cork also filed motions for the family court to find Dunaway in contempt for failure to pay child support and to provide medical insurance.[1] Dunaway filed a motion to modify parenting time; he wanted the children to primarily reside with him in Georgia. Dunaway also filed a motion to modify child support and sought to have a portion of his current monthly child support payment forwarded to an escrow account until the family court ruled upon his motion to modify same. Dunaway additionally filed a motion regarding phone communications with the children. The family court rendered an order that temporarily required Dunaway to solely provide transportation of the children for his timesharing. Thereafter, Dunaway filed a motion to require the parties to share equally in transporting the children for timesharing.

Ultimately, the family court conducted an evidentiary hearing upon all unresolved motions on July 19, 2019, and September 27, 2019. By Order entered November 15, 2019, the family court denied Dunaway's motion to modify parenting time to allow the children to primarily reside with him. The family court determined that the current timesharing schedule remained in the best interests of

---

[1] The record reflects that the family court held Brantley Dunaway in contempt by Order entered January 25, 2019, for failure to maintain health insurance coverage for the children in 2018.

the children. The family court also concluded that Dunaway would be solely responsible for providing the children's transportation for timesharing due to his harassing behavior of persons transporting the children for Cork during the transfer of the children. As to child support, the family court reduced Dunaway's monthly support to $1,021.27 and required Cork to provide medical insurance for the children, at a cost of $500 a month. The family court considered Cork's childcare expenses of $750 per month in reducing Dunaway's child support obligation. The family court further found Dunaway in contempt for his past failure to timely pay child support and to provide medical insurance for the children. The family court decided that Dunaway could "purge himself of this contempt by *strictly complying* with the Court's orders of support." November 15, 2019, Order at 10. Also, because of his contemptuous conduct, the family court ordered Dunaway to pay $877 for Cork's attorney's fees related thereto.

Both parties filed Kentucky Rules of Civil Procedure (CR) 59.05 motions to alter, amend, or vacate the November 15, 2009, Order. These motions were denied in part and granted in part by Order entered December 3, 2019. In the December 3, 2019, Order, the family court amended the November 15, 2009, Order to reflect that the hearing was conducted on July 19, 2019, and September 27, 2019. Also, it was amended to "require the parties to exchange the first two

pages of their federal income tax returns no later than November 1st of each year."
December 3, 2019, Order at 1.

Thereafter, Dunaway filed a Motion to Apply Credit due to an overpayment of child support. The family court denied the motion by Order entered December 9, 2019, and again concluded that Dunaway was not entitled to a credit. This appeal follows.

STANDARD OF REVIEW

The issues presented on appeal by Dunaway look to various motions seeking to modify the family court's original divorce decree, or subsequent orders thereto. The Kentucky Supreme Court has held that such modification motions filed post-decree necessitate evidentiary hearings which occurred in this case. *Anderson v. Johnson*, 350 S.W.3d 453, 456-57 (Ky. 2011).[2]

Accordingly, our initial standard of review is governed by CR 52.01 provides that the circuit court's "[f]indings of fact, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court

---

[2] In *Anderson v. Johnson*, 350 S.W.3d 453, 456-57 (Ky. 2011), the Court noted:

> Consequently, though named a "motion," a motion for modification is actually a vehicle for the reopening and rehearing on some part of a final order, which asks for adjudication on the merits presented at a required hearing. As such, family courts must make findings of fact and conclusions of law, and must enter the appropriate order of judgment when hearing modification motions.

to judge the credibility of the witnesses." This Court will not disturb those findings unless they are clearly erroneous. *Moore v. Asente*, 110 S.W.3d 336, 353-54 (Ky. 2003). And, "findings of fact are clearly erroneous only if they are manifestly against the weight of the evidence presented." *Frances v. Frances*, 266 S.W.3d 754, 756 (Ky. 2008). Thereafter, a family court's rulings on post-decree motions may be reversed only for an abuse of discretion. *Hempel v. Hempel*, 380 S.W.3d 549, 551 (Ky. App. 2012). To summarize our review, if the findings of fact by the family court are supported by substantial evidence and the correct law is applied, the ruling of the family court will only be reversed for an abuse of discretion. *See Coffman v. Rankin*, 260 S.W.3d 767, 770 (Ky. 2008). Additionally, concerning the modification of timesharing or visitation, the family court's abuse of discretion will be examined as to whether any proposed modification is in the best interests of the children as required by Kentucky Revised Statutes (KRS) 403.320(3). Our review proceeds accordingly.

ANALYSIS

Dunaway initially contends that the family court erred by denying his motion to modify timesharing. Dunaway alleges that he sought to "reverse the parenting plan, permitting the girls to live in Georgia with him during the school year, and provide Ms. Cork what was his parenting time of (1) weekend per month, and the summer months." Dunaway's Brief at 16. Dunaway claims that such a

parenting time schedule comports with the "equally shared parenting" presumption set forth in KRS 403.270(2). Dunaway points out that his family lives in Georgia, the children have friends in Georgia, and the children would have the benefit of better schools and extracurricular activities. Dunaway also believes that the family court failed to properly conduct a best interest analysis to determine if modification of timesharing was appropriate. Dunaway maintains that it is in the best interests of the children to modify parental timesharing and permit the children to primarily reside with him.

As Dunaway sought a modification of parental timesharing and not custody, KRS 403.320(3) controls our analysis. *See Pennington v. Marcum,* 266 S.W.3d 759, 769 (Ky. 2008). Under KRS 403.320(3), parental timesharing or visitation may be modified if modification would serve the best interests of the child. In examining "best interests of the child," KRS 403.270(2) sets out various factors in determining best interest, including the wishes of the child's parents, and the child's adjustment to his home, school, and community. *A.G. v. T.B.*, 452 S.W.3d 141, 144 (Ky. App. 2014). However, the equal timesharing presumption set forth KRS 403.270(2) is only applicable to an initial determination of timesharing and not to a modification of timesharing. *Layman v. Bohanon*, 599 S.W.3d 423, 431 (Ky. 2020). Again, as noted, the family court possesses broad discretion in modifying parental timesharing. *Pennington*, 266 S.W.3d at 769.

And, a decision by the family court upon modification of parental timesharing will only be disturbed where a clear abuse of discretion has occurred or where "clearly erroneous in light of the facts and circumstances of the case." *Layman*, 599 S.W.3d at 431.

In its November 15, 2019, Order, the family court determined that it was in the best interests of the children to not modify timesharing:

> Mr. Dunaway is seeking to change the parenting schedule so that the children live primarily with him in Georgia. In support of his motion, he has renewed many of his complaints about Ms. Cork, including that she works long hours and is unavailable to the children; that she leaves the children with unfamiliar and unvetted caregivers; that she withdraws the children from the usual extracurricular activities, and enrolls them in new activities without his consent; that she refuses to let him speak with the children on the phone; and that she refuses to provide him with information concerning the children's education, healthcare, and activities. Once again, the Court finds Mr. Dunaway's claims to lack merit. However, the Court will address them in turn.

> [Ms.] Cork owns and operates a management training company. When she started the business in 2015, she worked long hours and traveled extensively. Having no extended family in the Louisville area, she relied on professional nannies to watch the children while she worked. Ms. Cork has employed four nannies over a five-year period. Several quit after being harassed by Mr. Dunaway. Ms. Cork's current nanny, Jessi Weiss, has been with the family for two years. Jessi has her own bedroom in Ms. Cork's home, but she does not live there full-time. Ms. Cork described Jessi as "part of the family." The children know and love her.

-8-

Ms. Cork's business has become very successful and now employees several individuals. Ms. Cork no longer travels when the children are in her care. She has not been away from home overnight in more than two years.

Jessi watches the children an average of 4.5 hours per week, after school, while Ms. Cork works (typically, from home). Jessi also watches the children for a few hours on Thursday nights so that Ms. Cork can have dinner with her boyfriend of six years, Coleman Karleski.

. . . .

Mr. Dunaway also complains that Ms. Cork has failed to provide a stable home for the children. He alleges that she has moved five times since the parties' divorce. In fact, Ms. Cork has moved three times, but she has remained in the same neighborhood. Ms. Cork testified that her financial circumstances have improved significantly and that each move was for the purpose of obtaining a better home for the children.

By his own admission, Mr. Dunaway has also moved three times since the parties' divorce. He has lived with his mother, in a small apartment, and now in a condominium.

Savanah [sic] attends Highland Middle School. She is enrolled in a highly selective project-based learning program for advanced placement students. She earns straight-A's. Savannah is a member of the swim team, and she sings in the school choir. She has also participated in art club, student council, and dance. Ms. Cork describes Savannah as confident and loving, and says she sticks up for herself and others.

Finnleigh attends Bloom Elementary School. She also earns excellent grades and has outstanding test scores. Finnleigh is a member of the Louisville Soccer Club and participates in two different competitive

leagues.  Ms. Cork describes Finnleigh as curious, empathetic, and funny.

Both children have excellent relationships with their teachers and peers.  They have strong social skills and no reported behavioral problems.  Ms. Cork has always been active in the children's education.  She attends most field trips and co-sponsors the Bloom Elementary "Fund Run," an annual fundraiser.

The children are well-bonded to Ms. Cork, Mr. Karleski, and his extended family.  They enjoy regular trips to the beach and the lake.  They attend social events as a family and enjoy going to the theater together.

Mr. Dunaway complains that Ms. Cork often withdraws the children from extracurricular activities.  This is not the case.  Savannah discontinued cheerleading in 5th grade because her school no longer offered the program.  She discontinued soccer around the same time to focus on dance.  Ms. Cork limits the children to two extracurricular activities at a time, to ensure that their schooling is not affected.  The children select the activities that are most important to them.  They do not quit mid-cycle.  Ms. Cork is as involved in the children's activities as she is in their education.  She takes them to all games and competitions, and to nearly all practices.

. . . .

Mr. Dunaway also complains that Ms. Cork does not keep him apprised of the children's school functions, medical problems, or activity schedule.  Ms. Cork has provided Mr. Dunaway with contact information for the children's school, sports teams, and other extracurricular activities.  All information he might require, including grades and schedules, is available directly from the provider.

-10-

Lastly, in support of his motion for primary residence, Mr. Dunaway testified that the schools in Buford, Georgia outperform the schools in Jefferson County. Aside from a website rating from a private company, niche.com, Mr. Dunaway presented no information on the Buford school system, including what academic or extracurricular programs would be available to the children.

KRS 403.320(3) permits the Court to modify an order for visitation whenever such modification would serve the best interests of the child. In this case, there is nothing to suggest that relocating the children to Georgia would be in their best interest. Savannah and Finnleigh are well established in Louisville. They are thriving in school and active in their community. By all accounts, they are happy, healthy, well-adjusted, and high achieving children. Both are closely bonded to Ms. Cork, to her boyfriend (who [sic] they have known most of their lives) and to his mother, who they affectionately call "granny."

November 15, 2019, Order at 2-5, 7.

It is clear the family court considered the best interest's factors set forth in KRS 403.270 and believed it was in the best interests of the children not to modify timesharing. Of import, the family court found that the children were "thriving in school and active in their community" and are "happy, healthy, well-adjusted, and high achieving." November 15, 2019, Order at 7. And, as previously noted, the Kentucky Supreme Court has held there is no presumption of equal timesharing when considering a motion to modify same. *See Layman*, 599 S.W.3d at 431. Based upon our review of the record and the evidence considered

-11-

by the family court, we are unable to conclude that the family court's findings of fact were clearly erroneous nor was denial of Dunaway's motion to modify timesharing an abuse of discretion.

Dunaway next claims the family court erroneously denied him a credit or recoupment of $9,833.72 in overpaid child support payments. Dunaway points out that he filed a motion to modify child support on November 13, 2018, and that the family court reduced his child support by Order entered November 15, 2019. From November 13, 2018, to November 15, 2019, Dunaway states that he overpaid child support in the amount of $9,833.72, but the family court did not permit recoupment of such overpayment. Dunaway also asserts that Cork was on notice that his child support would likely be decreased, and by denying a credit, Cork is essentially given a windfall in child support benefits. Dunaway contends the family court should have ordered Cork to reimburse him the overpayment of $9,833.72, and the family court abused its discretion by failing to do so.

In Kentucky, the law is well settled that child support is for the benefit of the child and "belongs to the child not the parents." *Gibson v. Gibson*, 211 S.W.3d 601, 609 (Ky. App. 2006). For this reason, child support benefits are zealously guarded by the Court, and any "restitution or recoupment of excess child support is inappropriate unless there exists an accumulation of benefits not consumed for support." *Hempel v. Hempel*, 432 S.W.3d 730, 732 (Ky. 2014)

-12-

(quoting *Clay v. Clay*, 707 S.W.2d 352, 354 (Ky. App. 1986)). So, for Dunaway to be entitled to a credit or recoupment of overpaid child support, he must demonstrate that Cork possessed an accumulation of child support payments that were not consumed for support of the children.

In denying Dunaway a credit or reimbursement, the family court found that there was no evidence that Cork possessed any unused accumulation of child support. In his brief, Dunaway has not cited this Court to any evidence that such an accumulation of child support existed. Rather, Dunaway focuses on the unfairness of denying him a credit and of allowing Cork to retain a windfall. We emphasize that child support does not belong to a parent and is intended solely for the benefit of the child. It is deeply rooted and recognized in our laws that a parent has a fundamental duty to support a minor child. There being no evidence to support Dunaway's argument, we conclude that the family court did not abuse its discretion or commit reversible error by failing to credit or reimburse Dunaway for overpaid child support payments.

Dunaway also asserts that the family court improperly found him in contempt for failure to pay child support and provide health insurance coverage for the children in 2018. Dunaway argues that he had actually overpaid child support after the family court modified the child support payment in 2016; thus, the contempt finding was arbitrary. Additionally, Dunaway states that he did not

-13-

intentionally violate the family court's order as to child support but lacked the necessary funds to meet his monthly child support obligation. Dunaway also maintains that he provided health insurance coverage for the children and presented evidence demonstrating same.

The Kentucky Supreme Court has recognized that a trial court possesses "broad authority to enforce its orders, and contempt proceedings are part of that authority." *Commonwealth, Cabinet for Health and Family Services v. Ivy*, 353 S.W.3d 324, 332 (Ky. 2011). As to civil contempt, it is said that the "contemnor must, at the time the sanction is imposed, have the ability to purge the contempt by compliance." *Ivy*, 353 S.W.3d at 334-35. Moreover, in civil contempt, the family court may award the injured party compensatory damages resulting from the contemptuous behavior. *Louisville Metro Dep't of Corrections v. King*, 258 S.W.3d 419, 422 (Ky. App. 2007) (citing *White v. Sullivan*, 667 S.W.2d 385, 387 (Ky. App. 1983)). Under KRS 403.240(2), the failure of a party to comply with a child support order, without good cause, "shall constitute contempt of court." Our review is centered upon whether the family court abused its discretion by imposing contempt. *Ivy*, 353 S.W.3d at 332.

The record reveals that Dunaway filed a motion to modify child support and unilaterally decided to reduce his child support payments thereafter in plain contravention of a court order. There is no dispute concerning Dunaway's

conduct as to the child support payments, as he admitted same at the evidentiary hearing. In relation to healthcare coverage, the evidence was disputed. Dunaway submitted evidence that he paid the medical insurance for the children; on the other hand, Cork introduced evidence that Dunaway allowed the medical insurance to lapse by late payment of the monthly premiums.

In the November 15, 2019, Order, the family court observed that Dunaway "has a history of adjusting his child support to what he believes is an appropriate amount, with no regard to the orders in effect." November 15, 2019, Order at 10. The family court specifically found that Dunaway had "willfully, repeatedly, and without good cause, [sic] violated the Court's orders regarding child support and health insurance coverage." November 15, 2019, Order at 10. The family court then awarded Cork $877 in attorney's fees that she incurred due to Dunaway's contemptuous behavior. As to Dunaway's claim that he lacked funds to pay child support, Dunaway is self-employed in the marketing business, and the family court imputed to him an annual income of approximately $70,000. In an exhibit, he sought to have child support calculated based upon an annual salary of $60,000. Additionally, Dunaway apparently possessed sufficient discretionary funds to hire a private investigator to surveil Cork prior to the hearing.

To prevail, it was incumbent upon Dunaway "to show, clearly and convincingly, that he . . . was unable to comply with the court's order or was, for some other reason, justified in not complying." *Ivy*, 353 S.W.3d at 332 (citation omitted). This Dunaway has failed to do. Consequently, we do not believe the family court abused its discretion by finding Dunaway in contempt for failing to pay child support and to provide health insurance coverage or by awarding Cork $877 in attorney fees.

Dunaway also argues on appeal that the family court erred in its award of child care expenses. Particularly, Dunaway argues that Cork stated she was not seeking child care expenses in her "Discovery Responses," and failed to supplement same as required by "CR 26." Dunaway's Brief at 23. Dunaway further maintains that child care expenses of $50 per hour for two children is excessive and that Cork failed to present adequate documentation of the child care expenses incurred.

KRS 403.211(6) provides that the "court shall allocate between the parents . . . reasonable and necessary child care costs incurred due to employment[.]" It has been recognized that an award under KRS 403.211(6) "is in the nature of a prepayment or reimbursement of the share of actual costs, and if the expense is not incurred the other party is entitled to be repaid[.]" *Olson v. Olson*, 108 S.W.3d 650, 652 (Ky. App. 2003).

In this case, Cork testified that $50 per hour for two children was a reasonable amount to pay for child care in Louisville and submitted paid child care expenses as evidence. Cork further testified that she utilized child care about 4.5 hours per week. The family court obviously regarded Cork's testimony as compelling and found that she incurred reasonable child care expenses of $750 per month. In view of the evidence, we cannot conclude that the family court abused its discretion or that its findings were clearly erroneous. As to Dunaway's claim that Cork failed to properly supplement discovery under CR 26 to allege child care expenses, there is no citation in Dunaway's brief as to how this issue was preserved for appellate review, and it does not appear that the family court ruled upon this issue. CR 76.12(4)(c)(v). We are a court of review and generally do not review issues that are unpreserved. *Sneed v. Univ. of Louisville Hosp.*, 600 S.W.3d 221, 228 (Ky. 2020).

Dunaway lastly asserts that the family court erred by failing to order each parent to equally share in the transportation of the children for his parenting time. Dunaway maintains that it is unsafe and unreasonable to require him to shoulder all the responsibility for transportation of the children between Georgia and Kentucky. He insists that it is entirely reasonable to require Cork to share equally in the responsibility, and it was arbitrary for the family court to have ruled otherwise.

It is evident that the family court was concerned about Dunaway's past menacing behavior toward individuals who transported the children for Cork. The family court detailed such evidence:

> Mr. Dunaway complains that Ms. Cork has hired myriad unknown persons to facilitate parenting exchanges. The Court has addressed this issue previously. Mr. Dunaway committed domestic violence against Ms. Cork. A no-contact order necessitated use of a third-party exchange. Ms. Cork relied on her nannies or family members to drive the children to and from Georgia. Mr. Dunaway frequently harassed the third-party, who would then refuse further exchanges, thus requiring Ms. Cork to hire a new individual.

> One driver, Meagan Bossey, testified that Mr. Dunaway often made her wait 15-20 minutes to retrieve the children. On one occasion, he came out to inspect her car and noticed the tags were expired. He yelled at her, slammed the door in her face, and called the police. The police came to the home and released the children to Ms. Bossey.

> Another driver, Betty Karleski, testified that Mr. Dunaway would not allow the children to leave with her because she was a stranger. "Granny Bobby" as she is known to the children, is Coleman's mother. The children have known her for six years – most of their lives – and visit with her at least monthly. She attends their birthday parties, dance recitals, and soccer games. Mr. Dunaway told Ms. Karleski that she could not leave with the children unless she gave him a copy of her driver's license and tags. He detained her for nearly 2 hours, before eventually relenting and allowing the children to leave.

November 15, 2019, Order at 3-4.

Relying upon the above evidence, the family court concluded that Dunaway should continue to provide all transportation to facilitate his timesharing with the children. The family court observed that the "parties attempted to divide the responsibility for exchanges, but Mr. Dunaway's unabated harassing behavior made that arrangement untenable." November 15, 2019, Order at 8. Upon the whole, we did not believe that the family court abused its discretion or that its findings were clearly erroneous as to requiring Dunaway to provide the transportation for the children. It was entirely reasonable to do so in light of Dunaway's behavior.

For the foregoing reasons, we affirm the Orders of the Jefferson Circuit Court, Family Court Division.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Callie Walton
Louisville, Kentucky

BRIEF FOR APPELLEE:

Melanie Straw-Boone
Louisville, Kentucky