**KENTUCKY UTILITIES COMPANY,**
Appellant,

v.

**COMMONWEALTH of Kentucky, DEPARTMENT OF TRANSPORTATION, BUREAU OF HIGHWAYS, Appellee.**

Court of Appeals of Kentucky.

Aug. 26, 1983.

Rehearing Denied Nov. 18, 1983.

Discretionary Review Denied by Supreme Court April 11, 1984.

Malcolm Y. Marshall, Ogden, Robertson & Marshall, Louisville, for appellant.

David A. Collins, Dept. of Transp., Bureau of Highways, Flemingsburg, for appellee.

Before GUDGEL, LESTER and WHITE, JJ.

GUDGEL, Judge:

This appeal stems from a dispute between Kentucky Utilities (KU) and the Bureau of Highways (Bureau) as to which of them is liable for costs incurred in moving electric lines which impeded the improvement of Kentucky Highway No. 11 in Mason County. The circuit court adjudged that KU is liable for the costs. On appeal, KU contends that the circuit court erred in finding that its electric lines were constructed on public right-of-way and hence, pursuant to KRS 179.265, that it must pay the costs incurred in moving them. We agree. Accordingly, we reverse.

A detailed statement of the relevant factual background is crucial to our disposition of the issues on appeal. In 1836, the legislature enacted a statute which created a Mount Sterling and Maysville Turnpike Road Company. 1836 *Kentucky Acts*, Chapter 52. Sections 13 through 16 of the act vested the company with the right to condemn property and specified the method to be followed in compensating owners for any property taken. The right of condemnation included the right to condemn property adjacent to the roadbed for use as stone quarries. Section 24 provided as follows:

> Be it further enacted, That said road shall be sixty feet wide, except where it passes through towns; thirty feet of which shall be graded at an elevation not to exceed three and a half degrees; and eighteen feet of the same shall be covered with stone, broken and placed upon the road in the most approved M'Adams plan, nine inches thick.

After the company created by the 1836 act was organized, it built a toll road between Maysville and Mount Sterling. Although some evidence was adduced as to the road's location, there is no record as to the exact width of the public right-of-way which was acquired. However, copies of six deeds recorded before 1900 were introduced into evidence. Two of these were deeds which conveyed property to be used as stone quarries. The legal description in one referred to "the margin of sixty feet" and the description in the other to "the stone quarry 30 feet from the center of the road." In 1899, the company conveyed "all its road, roadbeds, right-of-way and turnpike" to Mason County. In 1922, a power company constructed electric lines in the area between the road and the fences along

it. Thereafter, the Bureau took over maintenance of the road.

According to a witness, the state converted the road from a gravel and rock road to a hard-surfaced road around 1925. As part of this project, both the power company's electric lines and the fences along the road were moved back. The power company sold its electric lines to KU in 1941. The situation remained essentially static until 1979, when substantial improvements to the road were undertaken. The plans for the work indicated that the Bureau's right-of-way extended to the fence lines along the road. Because KU's electric lines were situated between the travelled portion of the road and these fence lines, the Bureau asked KU to pay the costs which would be incurred in moving them. After KU refused to do so, the Bureau filed this action seeking injunctive relief. KU filed an answer and counterclaim seeking a judgment against the Bureau for the costs it would incur in moving its lines.

A trial before the court was held on June 8, 1982. On October 11, the court rendered findings of fact, conclusions of law and a judgment. The court found, in effect, that neither party had proved whether KU's lines were originally constructed on public right-of-way. The court also found, however, that public right-of-way has "for many years been considered to be the area between adjoining fences." Thus, because KU's lines were located within this area, the court concluded that the lines were constructed on public right-of-way and that KU was liable for the costs that were incurred in moving them. This appeal followed.

The parties agree that KRS 179.265 sets forth the test for determining which of them is liable. The statute provides as follows:

Cost of relocating utility facilities paid by public.—The cost of relocating any utility facilities originally constructed on other than public right of way required to be moved in the reconstruction or improvement of a public road shall be borne by the bureau of highways in the case of a road on the state system of highways, or by the public agency having jurisdiction over that public road and sponsoring the reconstruction or improvement.

Under the statute, the cost of relocating any utility facility *originally constructed* on other than public right-of-way which must be moved when a public road is improved is to be borne by the Bureau of Highways. However, if the utility facility was originally constructed on public right-of-way, the utility bears the cost. At the time KRS 179.265 was enacted in 1966, the legislature also enacted another statute, KRS 178.025(2), which created a presumption as to the width of public road right-of-way. This latter statute provides as follows:

(2) In the absence of any record, the width of a public road right-of-way shall be presumed to extend to and include that area lying outside the shoulders and ditch lines and within any landmarks such as fences, fence posts, corner stones or other similar monuments indicating the boundary line.

KRS 178.025(2), however, is not the first legislative effort to create a presumption as to the width of public road right-of-way in instances where there is no record. In 1914, the legislature enacted a statute which provided as follows:

A public road shall be deemed to include necessary culverts, sluices, drains, ditches, waterways, embankments, retaining walls, and all bridges having a span of five feet or less.

1914 Kentucky Acts, Chapter 80, § 1.

All public roads which may hereafter be established in any of the counties of this State as public roads shall occupy a right of way not less than thirty feet wide, but the County Court may order it to be a greater width.

1914 Kentucky Acts, Chapter 80, § 2. This statute was in force and effect in 1922 when KU's electric lines were constructed.

KU contends that KRS 179.265 fixes the date for determining liability under it as the date on which the utility facility is

originally constructed. KU argues, therefore, that the issue of whether it is liable for the costs incurred in moving its electric lines depends on the width of the right-of-way of Kentucky Highway No. 11 in 1922. KU urges that, because there is insufficient evidence to support a finding that the right-of-way in 1922 included the entire land area between the fences along the road and the road itself, the court erred in adjudging it liable for the costs incurred in moving its lines. The error is especially egregious, KU submits, because the court retroactively applied KRS 178.025(2) in violation of KRS 446.080(3).

The Bureau, on the other hand, argues that there was public use and occupancy of the entire land area between the road surface and the fence lines before 1922, and, thus, that its right-of-way extended to the fences in 1922. Moreover, the Bureau argues that the 1836 statute creating the turnpike company created a right-of-way of 60 feet and that the evidence supports a finding that a right-of-way of that width was acquired. Further, the Bureau argues that the court did not base its decision on or give retroactive effect to KRS 178.-025(2). Moreover, it submits that there is substantive probative evidence to support a finding that KU's lines were originally constructed on public right-of-way. Thus, the Bureau urges that the court's findings were not clearly erroneous and should not be disturbed.

We have concluded that KRS 179.265 mandates that the parties' rights be determined as of the date on which KU's lines were originally constructed, that, because there is no adequate record as to the width of the right-of-way of Highway No. 11 in 1922, the 1914 statute quoted above governs the parties' rights, and that the Bureau failed to prove that KU's electric lines were originally constructed within public right-of-way. We have also concluded that the 1836 statute did not create a 60 foot right-of-way for the road and that, although the court did not retroactively apply KRS 178.025(2), its finding of fact that the public right-of-way in 1922 extend-

ed to the fences along the road is clearly erroneous. We will now discuss the reasons for our conclusions.

There is no dispute that KRS 179.265 must be applied as of 1922, the year in which KU's electric lines were originally constructed. The problem in applying the statute stems from the uncertainty as to the width of the public right-of-way.

The Bureau attempted to establish the existence of a 60 foot right-of-way by arguing that the 1836 statute which created the turnpike company provided for one. However, there was insufficient evidence to support a finding that the company actually acquired a 60 foot right-of-way for the road. Certainly, the deeds introduced by the Bureau were not sufficient for this purpose, even though the wording of two of them could imply that such a right-of-way was acquired. Moreover, while the legislature can enact a statute which mandates or authorizes a right-of-way of a certain width for a particular road, it cannot legislatively appropriate private property to the commonwealth. Private property for public right-of-way must be acquired, as the 1836 act recognized, either by agreement or by the exercise of the power of eminent domain. Here, there is insufficient evidence to establish that the turnpike company either acquired or exercised its authority to condemn a 60 foot right-of-way along the entire length of the road. Thus, the 1836 statute does not afford the Bureau a basis for claiming that it had a 60 foot right-of-way in 1922.

Next, because there was no adequate record as to the width of the right-of-way in 1922 and insufficient evidence to establish that the width of the right-of-way included the area where the electric lines were constructed, the Bureau argued that the court should apply KRS 178.025(2) to determine the extent of its right-of-way. Application of this statute would have required the court to make two findings: first, that the fences along the road defined the limits of the public right-of-way in 1922, and second, that KU's lines were originally constructed on that right-of-way.

As KU points out, however, KRS 178.025(2) was not enacted until forty-four years after its electric lines were constructed, and the legislature did not expressly direct that the statute should be retroactively applied. Thus, the court could not apply KRS 178.025(2) without violating KRS 446.080(3), the statute which prohibits the retroactive application of statutes. Apparently aware that KRS 446.080(3) precluded application of the presumption set forth in KRS 178.025(2), the court simply found that public right-of-way has always been considered to extend to the fences along roads, that KRS 178.025(2) had merely codified the rule, and thus, that KU's lines were originally constructed on public right-of-way.

■ In our view, this finding is clearly erroneous. Neither the court nor the Bureau cite any authorities in this jurisdiction which recognize the presumption set forth in KRS 178.025(2) as a substantive rule. Moreover, the court ignored the 1914 statute quoted above, even though it was still in force and effect in 1922. This statute, like KRS 178.025(2), was obviously intended to create a presumption defining the extent of public right-of-way in instances where there was no record as to its width. The 1914 statute, however, unlike KRS 178.025(2), did not either expressly or by implication create a presumption that *all* property between a road and the fence lines adjoining it is part of the public right-of-way. Here, the evidence adduced by the Bureau was insufficient to prove that KU's lines were originally constructed within the area along Highway No. 11 which was deemed by the 1914 statute to be part of the public right-of-way. Therefore, the court's finding that they were is clearly erroneous.

■ Alternatively, the Bureau argues that there was public occupancy of the entire area between the fence lines along the road prior to 1922. Therefore, the Bureau urges, it had acquired prescriptive rights superior to KU's at the time the lines were constructed. This contention is untenable, however, because there is simply no evidence to support a finding that there was any public occupancy of the disputed area prior to 1922, nor any evidence that it has ever been publicly maintained.

Finally, the Bureau argues that the burden of proof under KRS 179.265 is on the utility and that KU failed to meet its burden. We disagree.

■ The burden of proof in civil actions, with certain exceptions, is governed by CR 43.01. The rule provides as follows:

(1) The party holding the affirmative of an issue must produce the evidence to prove it.

(2) The burden of proof in the whole action lies on the party who would be defeated if no evidence were given on either side.

Liability under KRS 179.265 depends upon whether the utility facility is constructed on public right-of-way. Thus, for the Bureau to prevail, it must establish that a particular utility facility is constructed on right-of-way, while the utility would have to prove that it was not. Therefore, the affirmative of the issue under KRS 179.265, *i.e.*, whether a particular utility facility was originally constructed on public right-of-way, is on the Bureau. Moreover, if no evidence as to this issue is adduced by either side, the Bureau's claim under the statute would be defeated. Accordingly, we hold that the burden of proof under KRS 179.265 is on the Bureau. It is fair that the Bureau be given this burden because any available evidence as to the width of a particular right-of-way is most likely in the Bureau's possession. Furthermore, the Bureau is entitled to claim the benefit of the presumptions set forth in KRS 178.025(2) and the 1914 statute which preceded it.

The court's judgment is reversed and remanded for further proceedings consistent with the views expressed in this opinion.

All concur.