RENDERED: JANUARY 9, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1103-MR


LOGAN JARVIS JOHNS AND
EILEEN DIANE JENNINGS                                    APPELLANTS


                    APPEAL FROM ALLEN CIRCUIT COURT
v.              HONORABLE MARK A. THURMOND, JUDGE
                        ACTION NO. 21-CI-00010


ELLIOT YOUNG AND
MARTINA F. YOUNG                                          APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, LAMBERT, AND MOYNAHAN, JUDGES.

CALDWELL, JUDGE:  Logan Jarvis Johns ("Johns") and Eileen Diane Jennings

("Jennings") appeal a July 31, 2024 order and judgment of the Allen Circuit Court

entered in favor of Elliot and Martina F. Young ("Youngs").  In sum, the circuit

court declared that Johns and Jennings have no legal right to access their land from a county road located on the Youngs' adjacent tract. Upon review, we affirm.

## BACKGROUND

The Youngs own a tract of approximately 80 acres at 400 Willow Oak Lane in Scottsville, Kentucky. Jennings owns a neighboring tract of approximately 14 acres at 1047 Pea Ridge Road, Scottsville, Kentucky, where her son, Johns, resides. Willow Oak Lane—a public right-of-way that the parties agree Allen County adopted into its system of county roads—runs generally north-south through the Young tract, near the Young/Jennings property line. If Willow Oak Lane is only 30 feet wide, measured 15 feet from the centerline of the roadway, then there is a sliver of land between the easternmost edge of the roadway and the Young/Jennings property line which belongs to the Youngs. The south end of the sliver has a width of approximately nine inches; the north end of the sliver is approximately six feet wide; and in total, the sliver is approximately eighty feet long.

The sole issue presented is whether Kentucky Revised Statute (KRS) 178.025, which applies to rights-of-way adopted prior to 2004 into a county's system of roads, operated in this matter to expand the width of Willow Oak Lane beyond 30 feet. Johns and Jennings argue Kentucky Revised Statutes ("KRS") 178.025 had exactly that effect. They contend it operated to expand the width of

Willow Oak Lane all the way to the Young/Jennings property line (causing Willow Oak Lane to effectively swallow the sliver of land) and that they are accordingly entitled—with or without the Youngs' permission—to access their tract from Willow Oak Lane by crossing the sliver. The Youngs, for their part, maintain that KRS 178.025 had no such effect; that Willow Oak Lane is no greater than 30 feet wide; and that because the sliver is otherwise encompassed within the boundary of their tract, they have the right to prohibit Johns and Jennings from crossing it to access the Jennings tract from Willow Oak Lane.

In January 2021, the parties respectively petitioned and cross-petitioned the Allen Circuit Court for a declaration of rights to resolve their dispute. A bench trial followed. The circuit court subsequently determined that KRS 178.025 did not expand the width of Willow Oak Lane as Johns and Jennings had argued; and, because Johns and Jennings otherwise had no easement for ingress and egress over the Youngs' property, the circuit court permanently enjoined them from accessing their tract from Willow Oak Lane by crossing the sliver. This appeal followed. Additional facts will be discussed as necessary.

**STANDARD OF REVIEW**

Because this is an appeal from a bench trial, our standard of review is governed by Kentucky Rule of Civil Procedure ("CR") 52.01. Under CR 52.01, the trial court makes specific findings of fact and separately states its conclusions of

law.  Further, "[f]indings of fact, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."  CR 52.01.  "If the trial judge's findings of fact in the underlying action are not clearly erroneous, i.e., are supported by substantial evidence, then the appellate court's role is confined to determining whether those facts support the trial judge's legal conclusion."  *Barber v. Bradley*, 505 S.W.3d 749, 754 (Ky. 2016) (quoting *Commonwealth v. Deloney*, 20 S.W.3d 471, 473-74 (Ky. 2000)).  "However, while deferential to the lower court's factual findings, appellate review of legal determinations and conclusions from a bench trial is *de novo*."  *Id*. (citation omitted).

## ANALYSIS

Johns and Jennings claim the circuit court erred because it did not accept their position outlined above when they asserted it in a summary judgment motion and later at trial.  They broadly argue—with a dearth of supporting authority or analysis—that the circuit court's dispositive order relied instead upon an improper interpretation and application of KRS 178.025.

To the extent Johns and Jennings are arguing the circuit court erred by denying their motion for summary judgment, this is a nonissue.  Generally, an order denying a motion for summary judgment is not appealable.  *Gumm v. Combs*, 302 S.W.2d 616, 617 (Ky. 1957).  Johns and Jennings cite no exception to that

-4-

rule. And in any event, once the trial in this matter began, the underlying purpose

of summary judgment expired and all matters of fact and law procedurally merged

into the trial phase, subject to in-trial motions for directed verdict or dismissal and

post-judgment motions for new trial and/or judgment notwithstanding the verdict.

*See Transp. Cabinet, Bureau of Highways, Commonwealth of Ky. v. Leneave*, 751

S.W.2d 36, 38 (Ky. App. 1988).

As for their contention that the circuit court's dispositive order relied

upon an improper interpretation and application of KRS 178.025, we begin our

analysis by noting it is undisputed that Allen County, by and through its Fiscal

Court, formally accepted Willow Oak Lane (when it was previously known as

"Harlan Sykes Lane") as a county road by virtue of an April 7, 1981 ordinance.[1]

As such, Willow Oak Lane was not automatically required to occupy a width

---

[1] The April 7, 1981 ordinance was set forth in Book 10, Page 552, of the orders of the Allen Fiscal Court. Regarding the issue of width, the Allen Fiscal Court's April 7, 1981 ordinance provided in relevant part:

> 1. . . . The width of said roads shall be presumed to extend to and include that area lying outside the shoulders and ditch lines and within any landmarks such as fences, fence posts, corner stones, or other similar monuments indicating the boundary line, KRS 178.025.

> 2. That the width of all county roads hereafter established or of formal rights-of-way hereafter required shall be not less than 30 feet (15 feet on each side of the centerline), KRS 178.040(2).

greater than 30 feet,[2] and KRS 178.025 provided the means for determining its width. The statute provides in relevant part as follows:

> (2) In the absence of any record, the width of a public road right-of-way shall be presumed to extend to and include that area lying outside the shoulders and ditch lines and within any landmarks such as fences, fence posts, cornerstones, or other similar monuments indicating the boundary lines.

> (3) In the absence of both record or landmark, the right-of-way of a public road shall be deemed to extend to and include the shoulders and ditch lines adjacent to said road and to the top of cuts or toe of fills where such exist.

With that said, the circuit court thoroughly considered the parties' arguments and trial evidence and addressed how this statute applied to the width of Willow Oak Lane. In the relevant part of its order, the circuit court explained:

> Under KRS 178.025(2), the Court must first look to the records of the subject properties to ascertain the width of the right-of-way. Here, surveyor Gary Dunning testified that he was never made aware of any deed for the road. [The Youngs'] expert, surveyor Ashton McPherson, testified that he looked for a deeded right-of-way for the road but could not find where Young or Cramer[3] had ever deeded anything to the county to set a standard right-of-way. [Johns' and Jennings'] expert, surveyor James Adams, testified that he researched all of the deeds that join the disputed property. Like the others, Adams was not able to produce any evidence from the deeds regarding the width of the right-of-way. Accordingly, it is undisputed that neither the deed to the

_____

[2] *See* KRS 178.040(2).

[3] The Youngs acquired their property by deed from Ellet and Margaret Cramer in 2001.

-6-

Young Property nor the deed to the Jennings Property establish the right-of-way to what is now Willow Oak Lane. It is further undisputed that there is no recorded deed from or to the predecessors-in-title of the Young Property or the Jennings Property regarding the right-of-way. Accordingly the Court concludes that there is an "absence of any record" as contemplated by KRS 178.025(2) and must move to the next step in the analysis provided by KRS 178.025(2).

When, as here, the boundaries of the road or public right-of-way are not recorded, KRS 178.025(2) provides that "the width of a public road right-of-way shall be presumed to extend to and include that area lying outside the shoulders and ditch lines and within any landmarks such as fences, fence posts, cornerstones, or other similar monuments indicating the boundary lines." This provision is critical to the disposition of this controversy. If there is no evidence of any landmark, then the analysis must proceed to the third step set forth by KRS 178.025(3). If there is evidence of a landmark, then the right-of-way is presumed to extend to that landmark. For the reasons set forth hereinbelow, the Court does not believe that evidence of a landmark as contemplated by KRS 178.025(2) was produced by either party herein.

When questioned by the Court, [the Youngs'] expert McPherson testified that he did not perceive any landmark outside the edge of the blacktop which would indicate a border to the right-of-way other than what he measured.

For his part, [Johns' and Jennings'] expert Adams testified that it is his opinion that the right-of-way for Willow Oak Lane extends to the Jennings property line "because of the applicability of that [county] ordinance." When asked on direct examination as to whether there was a gap between the right-of-way and the boundary of the Jennings Property, Adams opined generally that

-7-

My opinion on this would have been that's all right-of-way. Because in my opinion that county ordinance covered that. Because, in my opinion again, that's what that ordinance was supposed to take care of.

Finally, Adams testified as follows when questioned by the Court with regard to his reliance on any landmarks:

COURT: The ordinance states that the width is to be presumed to extend to an area lying outside the shoulders and ditch lines, and within any landmarks such as fences, fence posts, cornerstones, or other similar monuments indicating the boundary, and *so my question for you is, what precisely is the landmark or landmarks such as fences, fence posts, cornerstones, or other similar monuments that you are relying on to extend that right-of-way?*

ADAMS: *The corners that Mr. Dunning set* . . . ok, I took in consideration Mr. McPherson's corners that he set, and the corners that Mr. Dunning set and also took in consideration the monument that they found in the road that they were talking about earlier and even the back corners all the way back to the other road and the back corner of the tract across the street here, this original corner back here, and, I took all of those into consideration and all of that in what is appeared to me looked like when this exception was taken out here which not was Minor Plat Book 14, Page 164, when that was done, that's what I took to establish that.

In addition, Adams testified that the right-of-way "extends to the fence line just like the ordinance says."

-8-

However, there is no fence line on this segment of the property. Instead, Dunning established the property line running with Willow Oak Lane with the assistance of Edward Isenberg[4] by drawing a north/south line between a corner post on the north end and a marker in the centerline of the gravel lane agreed to by Isenberg on the south end. It is undisputed in the record that this line is not evidenced by any fences, fence posts, corner stones, or other similar monuments.

Adams may have confused the vertical line (segment "A" in Exhibit 23)[5] with the diagonal line (segment "B") which Dunning testified was along the old paling fence. Dunning explicitly testified that the paling fence was not in the area where the road was. Adams also could have been referencing the fence installed by Young which was torn down by Johns, but this fence was installed later and has no bearing on the actual right-of-way of the road. In either event, the Court does not find Adams' testimony that the right-of-way extends to the "fence line" to be credible as it is not supported by the evidence.

Based on the foregoing, it is apparent that [Johns and Jennings] and their expert James Adams have interpreted the phrase "within any landmarks such as fences, fence posts, cornerstones, or other similar monuments indicating the boundary lines" to mean that the right-of-way extends to the boundary lines "of the *property*." As such, Adams opines that KRS 178.025(2) and Allen Fiscal Court Order 10/552 operate to extend the right-of-way all the way to the property line with the Jennings Property.

---

[4] Edward Isenberg was a predecessor-in-title of what is now the Jennings tract.

[5] At trial, Gary Dunning's 1999 survey of the boundary line between the Young and Jennings tracts was admitted into evidence as Exhibit 23.

The Court disagrees and interprets KRS 178.025(2) as extending the right-of-way to any landmarks indicating the boundary lines "of the *roadway*." A question of statutory construction is a matter of law. *Cumberland Valley Contractors, Inc. v. Bell Ct. Coal Corp*., 238 S.W.3d 644, 647 (Ky. 2007). "The cardinal rule of statutory construction is that the intention of the legislature should be ascertained and given effect." *Jefferson Cty. Bd. of Educ. v. Fell*, 391 S.W.3d 713, 718 (Ky. 2012). In interpreting statutory terms, a reviewing court may take into account the history of the use of the term in Kentucky statutory and case law. *Sproul*, 507 S.W.3d at 572.[6]

In *Kentucky Utilities Company v. Commonwealth, Department of Transportation, Bureau of Highways*, 665 S.W.2d 918[, 922] (Ky. App. 1983), the Kentucky Court of Appeals noted that if KRS 178.025(2) were applied, it would require a finding "that the fences along the road defined the limits of the public right-of-way[.]" The court further noted that KRS 178.025(2) created a presumption that "*all* property between a road and the *fence lines adjoining it* is part of the public right-of-way." [*Id*. at 923 (boldfaced italics added by circuit court).] In so finding, the Court of Appeals clearly construed KRS 178.025(2) as contemplating landmarks indicative of the boundaries of the roadway.

Moreover, a reviewing court may give great weight to the reasoning contained in opinions by the Attorney General. *Woodward, Hobson & Fulton, L.L.P. v. Revenue Cabinet*, 69 S.W.3d 476, 480 (Ky. App. 2002). The Court finds the reasoning in Kentucky Attorney General Opinion 82-123 to be applicable and persuasive as to the issues raised herein. In that opinion, the Kentucky Attorney General observed that when a roadway has become a public road by prescription, the width of the right-of-way "is limited by the actual

---

[6] *Kentucky Props. Holding LLC v. Sproul*, 507 S.W.3d 563, 572 (Ky. 2016).

-10-

physical extent to which the adverse public user is inconsistent with the dominion and consent of the owner. *Cummings v. Fleming County Sportsmen's Club, Inc.*, Ky., 477 S.W.2d 163 (1972)." Accordingly, "the width of the right of way may be physically determined, based upon ***any fences which enclose the road strip***, if so, or upon the beaten path made by the public user vehicles." *Whilden v. Compton*, , 555 S.W.2d 272, 276 (Ky. App. 1977). Ky. OAG 82-123 (February 24, 1982) [(Boldfaced italics added by circuit court).] Again, this interpretation of a road's right-of-way is based on the boundaries of the roadway itself, not adjacent property.

Finally, the term "right-of-way" has been defined by the General Assembly elsewhere in the Kentucky Revised Statutes as including "the entire width between and immediately adjacent to the ***boundary lines of every way publicly maintained***[.]" *See* KRS 189.530(6) (emphasis added). Though the context of this statute is different from the issues herein, it is indicative of the legislature's intention to define rights-of-way by the boundaries of the roadway itself.

[Johns and Jennings] have not provided the Court with any authority supporting their contention that KRS 178.025(2) should be interpreted to extend the right-of-way to the property line. In light of the foregoing, the Court finds consistent with surveyor McPherson's testimony that there are no landmarks indicating the natural boundaries of Willow Oak Lane and will proceed to the third and final step of the analysis provided by KRS 178.025.

Absent records or landmarks, KRS 178.025(3) applies. This provision sets forth that "[*i*]*n the absence of both record or landmark*, the right-of-way of a public road shall be deemed ***to extend to and include the shoulders and ditch lines adjacent to said road and to the top of cuts or toe of fills where such exist***" (emphasis added). Crucially, [the Youngs'] expert McPherson

-11-

testified that the shoulder and ditch of the roadway was within the 30-foot right-of-way that he measured.

[Johns and Jennings] contend that the width could vary depending on how the roadway is maintained but provided no proof that it was ever maintained beyond the edge of the current blacktop all the way to the property line and further produced no proof regarding the shoulder and ditch lines adjacent to the road or the top of any existing cuts or toe of fills.

Based on the foregoing, the Court finds that the width of the right-of-way for Willow Oak Lane by operation of KRS 178.025(3) cannot be greater than the 30-foot right-of-way measured by Ashton McPherson. Accordingly, the Court further finds that the eastern boundary of the Young Property extends beyond the right-of-way of Willow Oak Lane such that Willow Oak Lane and its right-of-way are entirely enclosed within the boundary of the Young Property. Finally, the Court further finds that the Jennings Property does not abut the right-of-way of Willow Oak Lane but is instead separated by the "gap" described by surveyor McPherson.

(footnotes and record citations omitted.)

As stated, Johns and Jennings broadly contend on appeal that the circuit court improperly interpreted and applied KRS 178.025. Taken generously, their contention appears to be founded upon their continued belief that the phrase "within any landmarks such as fences, fence posts, cornerstones, or other similar monuments indicating the boundary lines," as set forth in KRS 178.025(2), supports that the width of Willow Oak Lane should extend to the boundary line between the *Young and Jennings properties*—not to any landmarks indicating the

boundary lines of the *roadway*. We disagree. Adding to the circuit court's analysis of that issue is unnecessary, as its explanation of the applicable law was correct, and its assessment of the evidence was not clearly erroneous. CR 52.01. We therefore adopt the circuit court's reasoning set forth above.

## CONCLUSION

Considering the foregoing, we AFFIRM.


ALL CONCUR.


BRIEF FOR APPELLANTS:                    NO BRIEF FOR APPELLEES.

Matthew J. Baker
Bowling Green, Kentucky